## LAKE COUNTY *v.* GRAHAM.[1]

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 1265. Submitted January 2, 1889. — Decided May 13, 1889.

*Lake County* v. *Rollins, ante* 662, affirmed and applied to the bonds in controversy in this action.

---

[1] The docket title of this case is *The Board of County Commissioners of the County of Lake* v. *Graham.*

When the constitution of a State imposes upon the municipal corporations within it a limitation of their power to incur debts, it is not within the power of the legislature of the State to dispense with that limitation, either directly or indirectly.

The constitution of Colorado imposed a limit upon the power of municipal corporations to contract debts. The legislature authorized county commissioners (a vote of the tax-payers first being had) to issue bonds of the county, not to exceed the amount of the floating debt, that amount to be ascertained by the commissioners, no reference being made in the statute to the constitutional limitation. The commissioners of Lake County settled the amount of the floating debt of the county at $500,000, which was in excess of the constitutional limitation, and issued bonds to that amount, in which reference was made to the statute, and in which it was " certified that all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of this bond." *Held,* that the county was not estopped to deny that the bond was issued in violation of the provisions of the Constitution.

THE case is stated in the opinion.

*Mr. Daniel E. Parks* and *Mr. H. B. Johnson* for plaintiff in error.

*Mr. Robert E. Foot* and *Mr. Willard Teller* for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

This action was instituted in the Circuit Court of the United States for the District of Colorado.

It is a suit against the county of Lake, in that State, and is based on one hundred and ninety-eight coupons, aggregating the sum of $7280, and being for interest on certain bonds issued by the county on the 2d of January, 1882.

The case was tried in the court below on an agreed statement of facts, which is in the bill of exceptions. From that agreement it appears that the bonds, from which the coupons sued on were detached, were executed in exchange for divers warrants of the county, to the amount of five hundred thousand dollars; that they were executed in compliance with an act of the General Assembly of Colorado, entitled "An act to enable the several counties of the State to fund their floating

indebtedness;" that the indebtedness of the county on the 6th day of September, 1881, the day the first notice was published under the act, as evidenced by county warrants, was $500,000, and the assessed valuation of the property of said county on said day was $16,423,403, afterwards rebated, in 1882, to $5,017,000, in accordance with a decision of the Supreme Court; and that such was the indebtedness and valuation on the day the bonds and coupons were issued.

There is also in the record an agreement between the parties that if section six of article eleven of the constitution of the State of Colorado be construed to be a limitation upon the power of the defendant county to contract any and all indebtedness, including all such as that sued upon in this action, then it is admitted that the claimed indebtedness sued on herein was incurred after the limitation prescribed by said constitution had been reached and exceeded by the said defendant, the county of Lake, and in the event of such a construction by the Circuit Court, or the Supreme Court of the United States, then and in that case, and for the purposes of the action, it is also admitted that the defendant is entitled to judgment thereon, unless the defendant is estopped from making such defence by the recitals contained on the face of the bonds and coupons sued on in this action.

In the case of *Commissioners of Lake County* v. *Rollins, ante,* 662, we have set forth said section six, and have decided that it does impose "a limitation upon the power of the defendant county to contract any and all indebtedness." That decision disposes of the first condition in the agreement recited above. It only remains to decide whether the county is estopped from making such defence by the recitals contained on the face of such bonds and coupons. The bonds and coupons are as follows:

"No. ⸺.                                    $⸺.

"United States of America, County of Lake, State of Colorado.
Funding bond. Series ⸺.

"The county of Lake, in the State of Colorado, acknowledges itself indebted, and promises to pay to ⸺ ⸺,

or bearer, ———— dollars, lawful money of the United States, for value received, redeemable at the pleasure, of the said county, after ten years, and absolutely due and payable twenty years from the date hereof, at the office of the treasurer of the said county, in the city of Leadville, or at the banking house of Jesup, Paton & Co., in the city of New York, at the option of the holder, with interest thereon at the rate of eight per cent per annum, payable semi-annually, on the first day of January and the first day of July in each year, at the office of the county treasurer aforesaid, or at the banking house of Jesup, Paton & Co., in the city of New York, at the option of the holder, upon the presentation and surrender of the annexed coupons as they severally become due.

"This bond is one of 710 funding bonds each of like date, comprised in three series, designated ' A,' ' B,' and ' C,' respectively, series ' A ' consisting of 450 bonds for the sum of one thousand dollars each, numbered from 1 to 450, both numbers inclusive; series ' B ' consisting of 60 bonds for the sum of five hundred dollars each, numbered from 451 to 510, both numbers inclusive; and series ' C ' consisting of 200 bonds for the sum of one hundred dollars each, numbered from 511 to 710, both numbers inclusive; the whole amounting to five hundred thousand dollars, which the board of county commissioners of said Lake County have issued under and by virtue of and in full compliance with an act of the general assembly of the State of Colorado entitled ' An act to enable the several counties of the State to fund their floating indebtedness,' approved February 21, 1881; and it is hereby certified that all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of this bond. It is further certified that this issue of bonds has been authorized by a vote of a majority of the duly qualified electors of said county of Lake, voting on the question at a general election duly held in said county on the 8th day of November, A.D. 1881.

"The faith and credit of the county of Lake are hereby pledged for the punctual payment of the principal and interest of this bond.

"In testimony whereof the board of county commissioners of the said county of Lake has caused this bond to be signed by its chairman, countersigned by the county treasurer, and attested by the county clerk, under the seal of the county, this second day of January, A.D. 1882.

"Attest:                                    ——— ———,

    "[County seal.]                          *County Clerk.*

                                           ——— ———,

              "*Chairman Board of County Commissioners.*"

Section one of the act under which the bonds were issued is as follows:

"SEC. 1. It shall be the duty of the county commissioners of any county having a floating indebtedness exceeding ten thousand dollars upon the petition of fifty of the electors of said counties (county) who shall have paid taxes upon property assessed to them in said county in the preceding year, to publish for the period of thirty days, in a newspaper within said county, a notice requesting the holders of the warrants of such county to submit, in writing, to the board of county commissioners, within thirty days from the date of the first publication of such notice, a statement of the amount of the warrants of such county which they will exchange, at par and accrued interest, for the bonds of such county, to be issued under the provisions of this act, taking such bonds at par. It shall be the duty of such board of county commissioners, at the next general election occurring after the expiration of thirty days from the date of the first publication of the notice aforementioned, upon the petition of fifty of the electors of such county, who shall have paid taxes upon property assessed to them in said county in the preceding year, to submit to the vote of the qualified electors of such county, who shall have paid taxes on property assessed to them in said county in the preceding year, the question whether the board of county commissioners shall issue bonds of such county, under the provisions of this act, in exchange, at par, for the warrants of such county, issued prior to the date of the first publication of the aforesaid notice; or they may submit such question at a

special election, which they are hereby empowered to call for that purpose, at any time after the expiration of thirty days from the date of the first publication of the notice aforementioned, on the petition of fifty qualified electors as aforesaid; and they shall publish, for the period of at least thirty days immediately preceding such general or special election, in some newspaper published within such county, a notice that such question will be submitted to the duly qualified electors as aforesaid at such election. The county treasurer of such county shall make out and cause to be delivered to the judges of election, in each election precinct in the county, prior to the said election, a certified list of the taxpayers in such county who shall have paid taxes upon property assessed to them in such county in the preceding year; and no person shall vote upon the question of the funding of the county indebtedness unless his name shall appear upon such list, or unless he shall have paid all county taxes assessed against him in such county in the preceding year. If a majority of the votes lawfully cast upon the question of such funding of the county indebtedness shall be for the funding of such indebtedness, the board of county commissioners may issue to any person or corporation holding any county warrant or warrants, issued prior to the date of the first publication of the aforementioned notice, coupon bonds of such county in exchange therefor at par. No bonds shall be issued of less denomination than one hundred dollars, and if issued for a greater amount, then for some multiple of that sum, and the rate of interest shall not exceed eight per cent per annum. The interest to be paid semi-annually, at the office of the county treasurer, or in the city of New York, at the option of the holders thereof. Such bonds to be payable at the pleasure of the county, after ten years from the date of their issuance, but absolutely due and payable twenty years after date of issue. The whole amount of bonds issued under this act shall not exceed the sum of the county indebtedness at the date of the first publication of the aforementioned notice, and the amount shall be determined by the county commissioners, and a certificate made of the same, and made a part of the records of the county; and any bond issued in ex-

cess of said sum shall be null and void; and all bonds issued under the provisions of this act shall be registered in the office of the state auditor, to whom a fee of ten cents shall be paid for recording each bond."

Nothing is better settled than this rule—that the purchaser of bonds, such as these, is held to know the constitutional provisions and the statutory restrictions bearing on the question of the authority to issue them; also the recitals of the bonds he buys; while, on the other hand, if he act in good faith and pay value, he is entitled to the protection of such recitals of facts as the bonds may contain.

In this case the constitution charges each purchaser with knowledge of the fact that, as to all counties whose assessed valuation equals one million of dollars, there is a maximum limit, beyond which those counties can incur no further indebtedness under any possible conditions, provided, that in calculating that limit, debts contracted before the adoption of the constitution are not to be counted. The statute, on the other hand, charges the purchaser with knowledge of the fact that the county commissioners were to issue bonds, at par, in exchange for such warrants of the county as were themselves issued prior to the date of the first publication of the notice provided for; that the only limitation on the issue of bonds in the statute was, that the bonds should not exceed in amount the sum of the county indebtedness on the day of notice aforesaid; that while the commissioners were empowered to determine the amount of such indebtedness, yet the statute does not refer that board, for the elements of its computation to the constitution or to the standards prescribed by the constitution, but leaves it open to them, without departing from any direction of the statute, to adopt solely the basis of the county warrants. The recitals of the bonds were merely to the effect that the issue was "under, and by virtue of, and in full compliance with," the statute; "that all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of this bond;" and that the issuing was "authorized by a vote of a majority of the duly qualified electors," etc.; no express reference being made

to the constitution, nor any statement made that the constitutional requirements had been observed.

There is, therefore, no estoppel as to the constitutional question, because there is no recital in regard to it. *Carroll County* v. *Smith*, 111 U. S. 556. It is true, it might be said, that inasmuch as the bonds recite that all the requirements of the statute had been fully complied with by the proper officers, and inasmuch as one of those requirements was that the officers should determine the amount of the county debt, the inference is fair and reasonable that the statute meant only that they should count what was a just and actual debt, not claims that were void, and therefore no debt; and that the recital made was in effect a statement that the whole matter had been examined by the board, and that they had issued bonds for only such warrants as were found to be issued in conformity to the law, the whole law — fundamental as well as statute. Waiving the question as to whether such a conclusion, persuasive as it might be in other aspects of a cause, is not too remote and indirect for the basis of an estoppel, the avowed object of which is to exclude from consideration the truth, still how could the case be any better for the defendant in error? Had the bond expressly stated that the board canvassed the debt, and found the same to be binding and valid under the law and the constitution, and that the same was $500,000, the recital would not be an estoppel. It must be remembered that these bonds show on their face an issue of $500,000. In the case of *Dixon County* v. *Field*, 111 U. S. 83, 92, this court said :

" Recurring, then, to a consideration of the recitals in the bonds, we assume, for the purposes of this argument, that they are in legal effect equivalent to a representation, or warranty, or certificate on the part of the county officers, that everything necessary by law to be done has been done, and every fact necessary by law to have existed did exist, to make the bonds lawful and binding. Of course, this does not extend to or cover matters of law. All parties are equally bound to know the law ; and a certificate reciting the actual facts, and that thereby the bonds were conformable to the law, when,

judicially speaking, they are not, will not make them so, nor can it work an estoppel upon the county to claim the protection of the law. Otherwise it would always be in the power of a municipal body, to which power was denied, to usurp the forbidden authority, by declaring that its assumption was within the law. This would be the clear exercise of legislative power, and would suppose such corporate bodies to be superior to the law itself."

Now, while it is true that the bonds show on their face an issue of $500,000, yet it is also true that neither the constitution nor the statute nor the bond shows the amount of the valuation of the county; and it therefore might be said that, for this reason, and notwithstanding the purchaser's knowledge of the limit, and his knowledge that $500,000 of debt was incurred, yet he might not have known that the limit had been exceeded, being ignorant of the other term in the calculation, that of the amount of the assessed values, and that the recital of conformity, misleading him, would operate as an estoppel.

This question is settled in the case of *Dixon County* v. *Field, supra.* The court there say, p. 93:

"If the fact necessary to the existence of the authority was by law to be ascertained, not officially by the officers charged with the execution of the power, but by reference to some express and definite record of a public character, then the true meaning of the law would be, that the authority to act at all depended upon the actual objective existence of the requisite fact, as shown by the record, and not upon its ascertainment and determination by any one; and the consequence would necessarily follow, that all persons claiming under the exercise of such a power might be put to proof of the fact made a condition of its lawfulness, notwithstanding any recitals in the instrument."

"The amount of the bonds issued was known. It is stated in the recital itself. It was $87,000. The holder of each bond was apprised of that fact. The amount of the assessed value of the taxable property in the county is not stated; but, *ex vi termini*, it was ascertainable in one way only, and that was by reference to the assessment itself, a public record equally ac-

cessible to all intending purchasers of bonds, as well as to the county officers. This being known, the ratio between the two amounts was fixed by an arithmetical calculation. No recital involving the amount of the assessed taxable valuation of the property to be taxed for the payment of the bonds can take the place of the assessment itself, for it is the amount as fixed by reference to that record that is made by the constitution the standard for measuring the limit of the municipal power. Nothing in the way of inquiry, ascertainment, or determination as to that fact is submitted to the county officers. They are bound, it is true, to learn from the assessment what the limit upon their authority is, as a necessary preliminary in the exercise of their functions and the performance of their duty; but the information is for themselves alone. All the world besides must have it from the same source, and for themselves. The fact, as it is recorded in the assessment itself, is extrinsic, and proves itself by inspection, and concludes all determinations that contradict it."

To the suggestion that the purchaser was not chargeable with knowledge of the fact that the maximum of 12 mills on the dollar had been exceeded — for the $500,000 of debt ascertained to be due on the day of notice, and for which bonds were issued, might have been partly or wholly created before the constitution was adopted, and therefore be excluded from the rule by the very terms of the constitution itself — there are two decisive answers. First, the bill of exceptions shows that the debt was not so created either in whole or in part. Second, the defendant in error is not entitled to an estoppel even if such an inference might have been drawn from the recital of conformity. The cases just cited show that the records are the only source of information.

The question here is distinguishable from that in the cases relied on by counsel for defendant in error. In this case the standard of validity is created by the constitution. In that standard two factors are to be considered; one the amount of assessed value, and the other the ratio between that assessed value and the debt proposed. These being

exactions of the constitution itself, it is not within the power of a legislature to dispense with them, either directly or indirectly, by the creation of a ministerial commission whose finding shall be taken in lieu of the facts.

In the case of *Sherman County* v. *Simons*, 109 U. S. 735, and others like it, the question was one of estoppel as against an exaction imposed by the legislature; and the holding was, that the legislature, being the source of exaction, had created a board authorized to determine whether its exaction had been complied with, and that its finding was conclusive to a *bona fide* purchaser. So also in *Oregon* v. *Jennings*, 119 U. S. 74, the condition violated was not one imposed by the constitution, but one fixed by the subscription contract of the people.

For these reasons, and under the stipulation above recited,

*The judgment of the court below is reversed, and the case is remanded to that court, with a direction to enter judgment for the defendant.*