## LAWRENCE COUNTY v. JEWELL.

### (Circuit Court of Appeals, Eighth Circuit. April 2, 1900.)

### No. 1,282.

**1. MUNICIPAL BONDS—TERRITORIAL COUNTIES—REFUNDING BONDS.**

Act July 30, 1886 (24 Stat. 170, c. 818), which, among other things, limited the power of territories and subdivisions thereof to contract indebtedness, but provided that "nothing in this act shall be construed to prohibit the refunding of any existing indebtedness of such territory, or of any political or municipal corporation, county, or other subdivision therein," was not intended to restrict the powers of territories or of such subdivisions therein in dealing with their past fiscal transactions, but left them at full liberty to refund their debts in any of the customary ways, including the selling of new securities for the purpose of redeeming those outstanding, subject only to the requirement of good faith in the exercise of such power; and new bonds so issued by a county, and sold for the purpose of redeeming outstanding bonds bearing a higher rate of interest, are not rendered invalid because sold at a discount, permitted by a statute of the territory, or because, being unable to procure all the old bonds, a portion of the proceeds was subsequently used in redemption of bonds of the new issue, where the transaction was conducted in good faith.

**2. SAME—VALIDITY OF TERRITORIAL LEGISLATION.**

Such act did not deprive a territory of the power which it previously possessed to authorize a county by a special act to sell its refunding bonds at a discount for the purpose of refunding indebtedness existing at the time the act was passed, the refunding of such indebtedness being expressly excluded from its operation.

In Error to the Circuit Court of the United States for the District of South Dakota.

Prior to March 9, 1883, the county of Lawrence, in the then territory of Dakota, had incurred a large indebtedness, consisting of county warrants and certificates of indebtedness, and of bonds to the amount of $375,000, bearing 10 per cent. interest, that had been previously issued pursuant to legislative authority. On the last-named date the territorial legislature of the territory of Dakota passed a special act which permitted the county "to issue new coupon bonds in the name of the county to an amount sufficient to enable it to refund and pay off its outstanding matured and unmatured indebtedness created by bonds heretofore issued, * * * and all outstanding warrants, certificates, and other evidence of indebtedness against the county of Lawrence; * * * such bonds to be in denominations of fifty ($50) and five hundred ($500) dollars, and shall be payable, principal and interest, at that national bank in the city of New York which the county commissioners of Lawrence county may select, in lawful money of the United States, not more than twenty years after the date of their issue, and may be redeemable in the same money at the pleasure of said county after ten (10) years from the date of their issue, and shall bear interest payable semiannually on the first days of May and November in each year at a rate not exceeding five per cent. (5%) per annum." This act provided that the question of issuing the refunding bonds should be submitted to a vote of the qualified electors of the county at an election held for that purpose, and that the refunding bonds should not be sold for less than their par value. The issuance of bonds pursuant to the provisions of said act was authorized at an election held on May 15, 1883, and between that date and September 10, 1887, refunding bonds were issued to the amount of $150,-400. At the latter date bonds of the county to the amount of $375,000, bearing 10 per cent. interest, were still outstanding, which the holders had up to that time refused to exchange for the 5 per cent. refunding bonds. In 1887 the county commissioners of the county resolved to issue 5 per cent. bonds to the amount of the then outstanding 10 per cents., and they succeeded by that means in retiring bonds of the latter description to the amount of $65,200. Not being able, however, after proper effort, to exchange the 5 per cent. bonds

for any greater amount of the 10 per cents., the board of county commissioners authorized the chairman ·of the board to negotiate the sale of 5 per cent. bonds to the amount of $300,000, with a view of using the proceeds to retire the existing 10 per cent. bonds. It transpired, however, that the 5 per cents. could not be sold at par, whereupon the legislative assembly of the territory of Dakota in the year 1889 passed another act, amendatory of the act of March 9, 1883, which permitted the board of county commissioners of Lawrence county to sell and dispose of refunding bonds issued pursuant to the act of March 9, 1883, at not less than 90 cents on the dollar, and to use the proceeds of such bonds in redeeming, purchasing, or paying off at not more than par the outstanding indebtedness of said county, or to exchange them at that rate for outstanding indebtedness of the county. Thereafter the board of county commissioners of Lawrence county sold and delivered to the Municipal Investment Company of Chicago, Ill., refunding 5 per cent. bonds to the amount of $300,-000, receiving therefor in cash the sum of $270,953.10, which amount was deposited in the First National Bank of Chicago in the name of D. A. McPherson, who was trustee or agent for the county, to be used by him for the special purpose of redeeming 10 per cent. bonds theretofore issued by the county of Lawrence, which were then outstanding. The 304 coupons upon which this action is founded were detached, as it seems, from the refunding 5 per cent. bonds which were sold as aforesaid to the Municipal Investment Company. On July 30, 1886, the congress of the United States passed an act (24 Stat. 170, c. 818) entitled "An act to prohibit the passage of local or special laws in the territories of the United States, to limit territorial indebtedness, and for other purposes." The first section of this act declared "that the legislatures of the territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * Regulating county and township affairs." The third and fourth sections of said act are as follows:

"Sec. 3. That no law of any territorial legislature shall authorize any debt to be contracted by or on behalf of such territory except in the following cases: To meet a casual deficit in the revenues, to pay the interest upon the territorial debt, to suppress insurrections or to provide for the public defense, except that in addition to any indebtedness created for such purposes the legislature may authorize a loan for the erection of penal, charitable or educational institutions for such territory if the total indebtedness of the territory is not thereby made to exceed one per centum upon the assessed value of the taxable property in such territory as shown by the last general assessment for taxation. And nothing in this act shall be construed to prohibit the refunding of any existing indebtedness of such territory or of any political or municipal corporation, county or other subdivision therein.

"Sec. 4. That no political or municipal corporation, county or other subdivision in any of the territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum of the value of the taxable property within such corporation, county or subdivision, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount given by such corporation shall be void: That nothing in this act contained shall be so construed as to affect the validity of any act of any territorial legislature heretofore enacted, or of any obligation existing or contracted thereunder, nor to preclude the issuing of bonds already contracted for in pursuance of express provisions of law; nor to prevent any territorial legislature from legalizing the acts of any county, municipal corporation or subdivision of any territory as to any bonds heretofore issued or contracted to be issued."

The case was tried below without the intervention of a jury, and the trial court rendered a judgment in favor of H. L. Jewell, the plaintiff below. To reverse said judgment the county of Lawrence brought a writ of error.

William L. McLaughlin (Robert C. Hayes, on the brief), for plaintiff in error.

Horace S. Oakley (Charles B. Wood, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The special finding which was made by the trial court shows that when the bonds of Lawrence county were issued from which the coupons in suit were detached the indebtedness of the county then exceeded 4 per centum of the value of all the taxable property within the county as ascertained by the last assessment, so that the decision in the case at bar hinges upon the construction which should be given to the act of congress of July 30, 1886 (24 Stat. 170, c. 818), whereby the above-described limitation upon corporate and municipal indebtedness was imposed. Counsel for the county contend that, when congress declared, in the concluding clause of section 3 of the act of July 30, 1886, that "nothing in this act shall be construed to prohibit the refunding of any existing indebtedness of such territory or of any political or municipal corporation, county, or other subdivision therein," nothing more was intended by the lawmaker than that new bonds might be exchanged, dollar for dollar, for old bonds without reference to the rate of interest reserved on either class of bonds; and that, even if this view of the meaning of the word "refund" is too limited, congress at least did not intend that refunding bonds should be sold below par,—as, for example, at 90 cents on the dollar,—and the proceeds used to take up outstanding bonds at par. On the other hand, counsel for the bondholders contend broadly that congress intended by the language above quoted to leave the territories and each of the political subdivisions thereof at full liberty to refund any of their indebtedness which existed on July 30, 1886, as they thought best; and to leave the territorial legislatures at liberty to legislate as they deemed proper relative to the refunding of any existing debts, provided the power to refund was exercised in good faith. We are of opinion that the latter view of the act is supported by the better reasons, and that it should prevail. It is noticeable that the power to refund existing debts was conferred upon the various political subdivisions of the territories in the most general terms, and that the clause conferring that power serves to qualify every other provision contained in the act. Besides, the provisions found in section 4 of the act—particularly the clause which authorizes the respective territorial legislatures to legalize previous acts under and by virtue of which bonds had been issued or contracted to be issued— indicate very clearly that congress not only intended to protect all existing obligations, but to confer on the various territorial legislatures plenary power to legislate as they deemed expedient with reference to the settlement of such obligations. As the learned judge of the trial court well remarked, a careful study of the act in all of its provisions leads one to conclude "that it was the intent of congress to leave the past fiscal acts of municipal corporations in the territories, and the power of the territorial legislature to deal with the same, wholly unaffected by the act. The limitation upon the indebtedness of such corporations fixed by the act is directed wholly to their new business affairs transacted after its passage. Past

follies could not be cured. The purpose of congress was to prevent their repetition. What had been done was not to be invalidated, nor was the power of municipal corporations or of the legislature to deal with and meet the emergencies arising out of past transactions to be in any way impaired." We have not been able to discover any provision in the act of July 30, 1886, which would warrant the inference that the right to refund existing debts which is therein recognized was intended to be confined to an actual exchange of new for old securities. It was, doubtless, well known to congress that it often happens that an old indebtedness on the part of a municipality can only be retired by the sale of new securities, and that this is one of the most common methods by which an old indebtedness is refunded when the new securities are designed to bear a lower rate of interest. It must be presumed, therefore, that when congress declared, as in the act of July 30, 1886, that it should not be construed "to prohibit the refunding of any existing indebtedness" that had been contracted by the various political subdivisions of the territories, it intended to leave them at full liberty to refund their debts in any of the customary ways in which such an operation might be accomplished, and to place no restrictions upon acts done in that behalf, save the restriction that the operation should be undertaken and pursued in good faith, for the sole purpose of retiring an existing debt. Any other view of the act under consideration would render the power to refund, which congress clearly intended to confer, of little practical value, since it is no doubt true that when the act was passed many municipal corporations within the territories were indebted for large sums of money that had been borrowed at high rates of interest which could only be discharged by the sale of new securities bearing a less rate of interest than the old indebtedness. Such was the situation in Lawrence county which led to the issuance and sale of the bonds in controversy, and it is not unreasonable to suppose that many other municipalities within the territories found themselves in a similar condition.

It is manifest, we think, from the findings which were made by the trial court that in issuing and selling the bonds from which the coupons in suit were clipped the county commissioners of Lawrence county acted in the utmost good faith. The bonds were issued and sold for the sole purpose of retiring the outstanding 10 per cent. bonds, and with no intent, so far as we can discover, to use the proceeds of the sale for an ulterior purpose. It is also manifest that, if the expectations of the county officials had been fully realized, and if the entire proceeds of the funding bonds could have been invested in the purchase of the old bonds, the transaction would have resulted in a large reduction of the obligations of the county. It so happened, however, that the entire issue of 10 per cent. bonds could not be obtained, whereupon so much of the sum realized from the sale of the funding bonds as had not been so expended after the lapse of about one year was used in repurchasing a portion of the funding bonds. In taking this latter step the county commissioners evidently acted in a manner which they deemed most ad-

vantageous to the county. We conclude, therefore, in the light of what has already been said concerning the proper interpretation of the act of July 30, 1886, that the county commissioners had the power to sell the funding bonds in controversy to the Municipal Investment Company, and that the bonds were valid obligations in the hands of the latter company and in the hands of its assignees, notwithstanding the temporary increase in the amount of the county debt while the funding operation was in progress, and notwithstanding the fact that the funding bonds were sold at a discount of 10 per cent., pursuant to legislative authority. The act of congress not only did not interdict such a transaction, it having been undertaken in good faith to refund an existing indebtedness, but in express terms left the county at liberty to refund the old debt in any way that that end could be accomplished with the sanction and approval of the territorial legislature.

It is further contended by the defendant county that the act of the territorial legislature of 1889 (Sess. Laws 1889, Dak. T. c. 56), which authorized the county to sell its funding bonds at 90 cents on the dollar for the purpose of providing a fund wherewith to retire its outstanding 10 per cent. bonds, was a special law regulating county affairs, and that, being a law of that nature, it was void, under section 1 of the act of July 30, 1886 (24 Stat. 170, c. 818), which prohibited such special legislation. This contention, however, overlooks the fact already mentioned that the concluding clause of section 3 of the act of July 30, 1886, qualifies every other provision of that act by declaring, in substance, that nothing in the act should be construed to prohibit the refunding of any indebtedness of any territory, or of any political or municipal corporation, county, or other subdivision therein. We think that this provision of the act in question left the territorial legislature at full liberty to pass such a special law as it deemed essential to enable any political subdivision of the territory to refund its indebtedness. The territorial legislature possessed that authority prior to the act of July 30, 1886, and it does not seem to have been the purpose of congress to withdraw the authority, or to place restrictions upon the exercise of any legislative power which it might be found expedient to exercise for the purpose of enabling any county or municipality of the territory to adjust, compound, and liquidate its antecedent liabilities. The power to legislate to that end remained as it was before the act of July 30, 1886, was passed. Upon the findings made by the trial court our conclusion is that the judgment below was for the right party, and it is accordingly affirmed.