## CITY OF PIERRE v. DUNSCOMB et al.

(Circuit Court of Appeals, Eighth Circuit. February 27, 1901.)

### No. 1,379.

1. A LATER GENERAL GRANT NOT LIMITED BY PRIOR SPECIFIC GRANT.

A later grant of general power to issue bonds for corporate purposes is not restricted by a prior grant of power to issue them for specified purposes.

2. FUNDING BONDS — POWER TO ISSUE INCLUDED IN POWER TO ISSUE FOR CORPORATE PURPOSES.

The power to borrow money and issue bonds for corporate purposes includes the power to issue bonds for the purpose of refunding the indebtedness of a corporation.

3. FUNDING BONDS—CHAPTER 37, LAWS S. D. 1890, AUTHORIZES.

Chapter 37, Laws S. D. 1890, art. 5, § 1, which empowers a city of that state to borrow money and issue bonds for corporate purposes, authorizes it to issue bonds to refund its indebtedness; and this grant of power is not restricted by the constitution of the state, or by chapter 16, Gen. Laws Dak. 1887.

4. FUNDING BONDS CREATE NO DEBT.

Funding bonds neither create nor increase the indebtedness of a municipality, but merely change its form.

5. CERTIFICATE OF ISSUE OF REFUNDING BONDS IN PURSUANCE OF LEGISLATIVE AUTHORITY—EFFECT.

The certificate upon the face of municipal bonds that they have been issued in pursuance of legislative authority for the purpose of funding the indebtedness of the city is a declaration that they have been issued for the purpose of funding a valid debt in the method prescribed by law, and that they neither create nor increase any indebtedness of the municipality; and, as against a bona fide purchaser, they estop the municipality from denying this declaration.

6. EXCESSIVE INDEBTEDNESS IMMATERIAL TO PURCHASER OF FUNDING BONDS.

When an innocent purchaser buys of others than the municipality and its agents its negotiable bonds, which recite that they were issued to fund the debt of the municipality, the question of excessive indebtedness does not arise, and the purchaser is not required to consider or inquire concerning it.

(Syllabus by the Court.)

1. MUNICIPALITIES—LIMITATION OF INDEBTEDNESS.

Where the constitution of the state prohibits the cities of the state from incurring an indebtedness beyond a given per cent. upon the assessed value of the taxable property of the city, bonds issued in excess of that limit will, upon proof of that fact, be declared void.

2. SAME—RECITALS IN BONDS.

Where there is no recital in the bonds to the effect that they do not exceed the constitutional limit of indebtedness, and the assessment roll of the city issuing the bonds, when taken in connection with the official public record of the indebtedness of the city, kept in pursuance of law, discloses the fact that they are in excess of the constitutional limit of indebtedness, then the general recital in the bonds that they are "issued for the purpose of funding the outstanding indebtedness of the city, in pursuance of the general incorporation laws of the state" and "an ordinance of the said city," will not estop the city from showing that the bonds exceed the amount of the constitutional limit of indebtedness; and when that fact is shown they are void in the hands of every one, including bona fide purchasers for value. Dixon Co. v. Field, 4 Sup. Ct. 315, 111 U. S. 83, 28 L. Ed. 360; Lake Co. v. Graham, 9 Sup. Ct. 654, 130 U. S. 674, 32 L. Ed. 1065; Sutliff v. Commissioners, 13 Sup. Ct. 318, 147 U. S. 230, 37 L. Ed. 145.

3. SAME.

In Gunnison Co. Com'rs v. E. H. Rollins & Sons, 19 Sup. Ct. 390, 173 U. S. 255, 43 L. Ed. 689, the supreme court deduced these two rules from their previous decisions: (1) That where the recital in the bonds is to the effect that they are issued under and by virtue of, and in full compliance with, the statute or laws of the state, or other equivalent recitals, the county or city issuing the bonds is not estopped from showing that the constitutional limit of indebtedness had been reached before the bonds were issued, and when that fact is shown the bonds are void in the hands of every one; (2) but, where the bonds contain an express recital to the effect that the debt thereby created does not exceed the limit prescribed by the constitution, then the county or city is estopped from asserting, as against a bona fide holder for value, that the contrary was the fact.

4. SAME—REFUNDING BONDS.

Where the indebtedness of a city exceeds the constitutional limit of indebtedness, the issue and sale for cash of funding bonds increases the indebtedness of the city, and the bonds are void. Doon Tp. v. Cummins, 12 Sup. Ct. 220, 142 U. S. 366, 35 L. Ed. 1044; Shaw v. School Dist., 23 C. C. A. 169, 77 Fed. 277; Keene Five-Cent Sav. Bank v. Lyon Co. (C. C.) 97 Fed. 159.

(Per Caldwell, Circuit Judge, dissenting.)

In Error to the Circuit Court of the United States for the District of South Dakota.

Ivan W. Goodner, for plaintiff in error.

A. B. Kittredge, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge. This is an action brought by the defendants in error, who were bona fide purchasers of bonds of the city of Pierre, without any notice of any defenses thereto, to recover upon certain coupons cut therefrom. The city interposes two defenses in this court: (1) That it had no authority to issue the bonds; and (2) that at the time they were issued its indebtedness exceeded the constitutional and statutory limitation of 5 per cent. of its assessed valuation, and the issue of these bonds increased its debt.

The bonds were issued to fund the floating indebtedness of the city, and the first defense is that the legislature conferred no authority upon this city to issue bonds for this purpose, because the general power conferred upon it by the general law for the incorporation of cities, which took effect on March 6, 1890 (Laws S. D. 1890, c. 37, art. 5, § 1), was limited by the constitution of the state, and by chapter 16, Gen. Laws Dak. 1887, to the purposes specified in the latter act. The act of 1887 took effect on March 8 of that year, and provided that any city organized, as was the city of Pierre, under a general law of the territory, might incur a bonded indebtedness for the purpose of erecting public school buildings and for certain other specified purposes, but it gave no power to such a city to issue its bonds for the purpose of funding its floating indebtedness. Section 1, c. 16, Gen. Laws 1887; section 1149, Pol. Code, Comp. Laws Dak. In the same year an act to provide for the general incorporation of cities, which took effect on March 11, 1887, and which gave authority to cities organized thereunder to borrow money on the credit of the corporation for corporate purposes, and to issue bonds therefor, was enacted by the legislature of Dakota territory, and is known as chapter 73, Gen. Laws Dak. 1887. The constitution of the state of South Dakota was adopted in the year 1889, and it provides:

"The legislature shall provide by general laws for the organization and classification of municipal corporations. * * * The legislature shall restrict the power of such corporations to levy taxes and assessments, borrow money and contract debts so as to prevent the abuse of such power." Article 10, § 1. "Except as otherwise provided in this constitution no tax or assessment shall be levied or collected or debts contracted by municipal corporations except in pursuance of law for public purposes specified by law, nor shall money raised by taxation, loan or assessment for one purpose be devoted to any other." Article 10, § 2.

In the year 1890, after the adoption of this constitution, the legislature of South Dakota passed the general law for the incorporation of cities under which the funding bonds in this case were issued. It provided by that law that the city council of any city organized under the prior general laws upon this subject should be subject to its provisions; that the city council of every such city should have the power "to borrow money on the credit of the corporation for cor-

porate purposes and issue bonds therefor in such amounts and forms and on such conditions as it shall prescribe," upon a favorable vote of a majority of the legal voters of its city; and that chapter 73 of the General Laws of 1887, and all acts and parts of acts inconsistent with this general incorporation law of 1890, were thereby repealed. Laws S. D. 1890, c. 37, art. 5, § 1, subd. 5; Id. art. 23, § 7. The power to issue bonds granted to the city council of the city of Pierre by this act of 1890 was plenary. It was general, not special. It was not limited to any specific purpose, but was to borrow money and issue bonds for all corporate purposes. The whole is greater than any of its parts, and includes them all, and the power to borrow money and issue bonds for all corporate purposes necessarily includes the power to do so for the purpose of paying or funding the floating indebtedness of the corporation. City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 280, 30 C. C. A. 38, 46, 57 U. S. App. 593, 608, 49 L. R. A. 534; Insurance Co. v. Mead (S. D.) 82 N. W. 78, 79, 83 N. W. 335. The contention of counsel for the city is that this plenary power was restricted and limited to the special purposes specified in section 1, c. 16, of the General Laws of 1887. But that position is untenable, for various reasons. The argument that the act of 1887 was a restriction of the power of corporations to borrow money and contract debts pursuant to the mandate of section 1, art. 14, of the constitution is futile, because the act of 1887 was enacted before the constitution was adopted. If the provisions of the acts of 1887 and 1890 were repugnant, the former would not repeal or restrict the latter, but the later act of 1890 would repeal the former to the extent of the repugnancy. But there is no inconsistency or repugnancy in the provisions of the two acts. The act of 1887 gave to cities the power to issue bonds for certain specified purposes. The law of 1890 granted the power to issue them for all corporate purposes. The effect of the latter was to grant the power to issue bonds for all corporate purposes not specified in the act of 1887, in addition to those there specified. "All statutes in pari materia are to be read and construed together as if they formed part of the same statute and were enacted at the same time." Potter's Dwar. St. 145. Reading these statutes together, the powers specified in the act of 1887 are enlarged by the additional grant of the general law of 1890, and the authority of the city of Pierre to issue bonds to fund its floating indebtedness under the act of 1890 is plain. Seward Co. Com'rs v. Ætna Life Ins. Co., 90 Fed. 222, 227, 32 C. C. A. 585, 590, 61 U. S. App. 41, 49; In re Henderson's Tobacco, 11 Wall. 652, 657, 20 L. Ed. 235; Gowen v. Harley, 56 Fed. 973, 979, 6 C. C. A. 190, 196, 12 U. S. App. 574, 584.

The second defense urged is that the bonds and coupons were void because they increased an indebtedness of the city which was in excess of the constitutional and statutory limitation at the time they were issued. This objection to the bonds arises upon this state of facts: At the time these bonds were issued the indebtedness of the city of Pierre was limited by the constitution and by the statutes of South Dakota to 5 per cent. of the assessed valuation of the property of the city. Section 4, art. 13, Const. S. D.; Gen. Laws S. D.

1890, c. 37, art. 5, § 1, subd. 5. The limit of the indebtedness of this city under this constitutional and statutory restriction was $48,032.25, and its indebtedness was more than $100,000 on July 1, 1890, when these bonds were issued. The amount of bonds issued was $25,000, and this appeared upon the face of each bond. The bonds were issued and sold to the National Bank of Commerce of Pierre on July 1, 1890, for $25,950 in money, which was paid to the treasurer of the city, who expended at different times during the months of July and August the aggregate amount of $23,319.38 in payment of outstanding warrants of the city; and it does not appear what disposition was made of the remainder of the proceeds of the bonds. The record of the proceedings of the city council disclosed this disposition of the bonds, and the act under which the bonds were issued required the city auditor to keep regular books of account, which should at all times show the financial condition of the city, and the amount of the evidences of its indebtedness which had been issued by its city council. Laws 1890, c. 37, art. 7, § 3. The plaintiff was a bona fide purchaser of these bonds, without any actual notice of any excessive indebtedness of the city, or of the method in which the bonds were used to satisfy that portion of the indebtedness which their proceeds discharged. Each of the bonds contained this recital:

"This bond is one of a series of bonds amounting to twenty-five thousand dollars issued for the purpose of funding the outstanding indebtedness of the city, in pursuance of the general incorporation laws of the state of South Dakota approved March seventh, 1890, adopted by said city, and an ordinance of said city of Pierre entitled 'An ordinance to issue bonds for the purpose of funding and paying the outstanding indebtedness of the city of Pierre,' approved April the twenty-fourth, 1890, and a vote of the electors in favor of issuing said bonds by a majority of the legal votes cast at a special election duly held in said city on the third day of June, 1890."

Now the position of the city is that in view of these facts the bonds were void, because the indebtedness exceeded its lawful limit at the time when the bonds were issued, and because, under the authority of Doon Tp. v. Cummins, 142 U. S. 367, 372, 378, 12 Sup. Ct. 220, 35 L. Ed. 1044, that indebtedness was increased temporarily by the sale of the bonds, and the deposit of the money in the treasury of the city before it was applied to the discharge of the floating indebtedness which it was procured to pay. This contention has been repeatedly and exhaustively considered by this court upon a review of all the authorities, and held to be untenable. City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 280, 30 C. C. A. 38, 45, 46, 57 U. S. App. 593, 606–608, 49 L. R. A. 534; Lawrence County v. Jewell, 100 Fed. 905, 908, 41 C. C. A. 109, 113. The supreme court of South Dakota has reached the same conclusion. Insurance Co. v. Mead, 82 N. W. 78, 83 N. W. 335. It would be a useless task to restate the arguments and review the authorities which have led us to this conclusion, and we shall content ourselves with briefly stating the propositions upon which this result is founded. It rests upon the broad proposition that every municipality is estopped, as against an innocent purchaser who has bought its bonds in reliance upon certificates upon their face which its officers were authorized to make, from denying the truth of those certificates in order to defeat the

securities. From this broad proposition the following rules of law have been deduced, and are established by repeated decisions of the courts: The recitals of officers of a municipality who are invested with authority to perform a precedent condition to the issue of negotiable bonds, or with authority to determine when that condition has been performed, that the bonds have been issued "in pursuance of" or "in conformity with" or "by virtue of" or "by authority of" the statute, preclude inquiry, as against an innocent purchaser for value, as to whether or not the precedent conditions had been performed when the bonds were delivered. Such recitals estop the municipal body from denying the performance of every act and the discharge of every duty which under the law its officers were required to do or discharge before and at the time when they delivered the bonds. National Life Ins. Co. v. Board of Education, 62 Fed. 778, 792, 793, 10 C. C. A. 639, 651, 652, 27 U. S. App. 244, 266, 268; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 57 U. S. App. 593, 607, 49 L. R. A. 534; Hughes Co. v. Livingston, 43. C. C. A. 541, 104 Fed. 306, 316; Rathbone v. Board, 83 Fed. 125, 131, 27 C. C. A. 477, 483, 49 U. S. App. 577, 589; Haskell Co. Com'rs v. National Life Ins. Co., 90 Fed. 228, 231, 32 C. C. A. 591, 594, 61 U. S. App. 53, 58; City of South St. Paul v. Lamprecht Bros. Co., 88 Fed. 449, 453, 31 C. C. A. 585, 589, 60 U. S. App. 78, 85; Meade Co. Com'rs v. Ætna Life Ins. Co., 90 Fed. 237, 32 C. C. A. 600, 61 U. S. App. 51; Board v. Heed, 101 Fed. 768, 41 C. C. A. 668; Wesson v. Saline Co., 73 Fed. 917, 919, 20 C. C. A. 227, 229, 34 U. S. App. 680, 684. A municipal corporation is estopped from defeating an action by an innocent purchaser to collect its negotiable bonds, which recite that they were issued for the purpose of funding the bonds, warrants, or floating debt of the corporation, either on the ground that the warrants or bonds which they were issued to satisfy were void, or that the apparent debt which they were issued to pay was fictitious. Hughes Co. v. Livingston, 43 C. C. A. 541, 104 Fed. 306, 318; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 275, 277, 30 C. C. A. 38, 41, 43, 57 U. S. App. 593, 600, 603, 49 L. R. A. 534; National Life Ins. Co. v. Board of Education, 62 Fed. 778, 785, 10 C. C. A. 637, 644, 27 U. S. App. 244, 256; West Plains Tp. v. Sage, 69 Fed. 943, 946, 16 C. C. A. 553, 557, 32 U. S. App. 725, 733; Seward Co. Com'rs v. Ætna Life Ins. Co., 90 Fed. 222, 224, 32 C. C. A. 585, 587, 61 U. S. App. 41, 45; Board v. Howard, 83 Fed. 296, 298, 27 C. C. A. 531, 533, 49 U. S. App. 642, 645; Barber Co. Com'rs v. Society for Savings, 41 C. C. A. 667, 101 Fed. 767. If upon any theory the bonds of a municipality can be valid, an innocent purchaser has the right to presume that they are so, and that the recitals in them are true. E. H. Rollins & Sons v. Gunnison Co. Com'rs, 80 Fed. 692, 699, 26 C. C. A. 91, 98, 49 U. S. App. 399, 412; City of Evansville v. Dennett, 161 U. S. 434, 443, 446, 16 Sup. Ct. 613, 40 L. Ed. 760; Commissioners v. Potter, 142 U. S. 355, 363, 364, 12 Sup. Ct. 216, 35 L. Ed. 1040. Under the decision in Doon Tp. v. Cummins, 142 U. S. 367, 372, 378, 12 Sup. Ct. 220, 35 L. Ed. 1044, there was a legal method by which the city of Pierre could have funded its floating indebtedness, although that indebtedness ex-

ceeded the constitutional limit. That method was by the exchange of the new obligations for the old ones, dollar for dollar. If this was the only method by which this funding could be lawfully accomplished the power was granted to, and the duty imposed upon, the officers of the city to issue these bonds in this way, and their certificate that they had issued them in pursuance of the statute which authorized the funding was a declaration that they had funded the indebtedness by this exchange of securities. If they had pursued this method, the issue of these bonds would not have increased the indebtedness of their city, but would have simply changed the form of its obligations. The certificate in the bonds is, therefore, a representation that the issue of the bonds neither created nor increased the indebtedness of the city, but that it simply changed its form. Hughes Co. v. Livingston, 43 C. C. A. 541, 104 Fed. 306, 317; Board v. Platt, 79 Fed. 567, 569, 25 C. C. A. 87, 89, 49 U. S. App. 216, 220; E. H. Rollins & Sons v. Gunnison Co. Com'rs, 80 Fed. 692, 698, 26 C. C. A. 91, 98, 49 U. S. App. 399, 411; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 278, 30 C. C. A. 38, 44, 57 U. S. App. 593, 605, 49 L. R. A. 534; Lyon Co. v. Keene Five-Cent Sav. Bank, 40 C. C. A. 391, 393, 100 Fed. 337, 339. This case is not governed by the decision in Doon Tp. v. Cummins, for the reason stated in City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 278, 30 C. C. A. 38, 45, 57 U. S. App. 593, 607, 49 L. R. A. 534, namely, because the holder of the bonds in that case was not a bona fide purchaser who could rely upon the certificate, while the plaintiff in this case is such. The cases of Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360, and Lake Co. v. Graham, 130 U. S. 674, 680, 9 Sup. Ct. 654, 32 L. Ed. 1065, in which it appeared upon the face of the bonds that the aggregate amount of the issue was in excess of the lawful limit of the indebtedness of the municipality, do not govern this case, because the amount of this issue ($25,000) was far within the limit of a debt of $48,033.25, which this city could lawfully incur. A funding of the indebtedness of a city, conducted in the legal method pointed out by the decisions of the courts, neither creates nor increases the indebtedness of the city. A certificate that bonds have been issued to fund such an indebtedness is a representation that the legal method has been pursued. Hence, where an innocent purchaser buys of others than the municipality and its agents negotiable bonds which recite that they were issued to fund the debt or the obligations of the municipality, the question of excessive indebtedness does not arise, and the purchaser is not required to consider or inquire concerning it. The certificate is in effect a representation that there has been no creation or increase of the debt of the municipality, but a mere change of its form. The plaintiff in this case had the right, in purchasing these bonds, to rely upon the legal presumption and the certificate of the officers of the city that they had accomplished the funding by the legal method; and now that the municipality has received the proceeds of the bonds, and the purchaser has parted with the price which he paid for them in reliance upon this presumption and certificate, the city is estopped to show that its officers pursued an illegal method, or that its certificate is false, for the **purpose of defeating its securities.** The judgment below is affirmed.

CALDWELL, Circuit Judge (dissenting). To demonstrate that no recovery can legally be had against the city in this case, it is only necessary to set out the provisions of the constitution and the statutes of the state applicable to the case, the agreed statement of facts, and special findings of the court, and a copy of the bond. Sections 4 and 5 of article 13 of the constitution of South Dakota read as follows:

"Sec. 4. The debt of any county, city, town, school district or other subdivision, shall never exceed five per centum upon the assessed value of the taxable property therein. In estimating the amount of indebtedness which a municipality or subdivision may incur, the amount of indebtedness contracted prior to the adoption of this constitution shall be included.

"Sec. 5. Any city, county, town, school district or other subdivision incurring indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due, and all laws or ordinances providing for the payment of the interest or principal of any debt shall be irrepealable until such debt be paid."

There is a statute of the state to the same effect. The laws of the state make provision for assessing property for taxation, and these assessments are official public records accessible to all. The indebtedness of the city was at all times shown by the books kept by the city auditor in compliance with the following statute:

"The city auditor shall keep regular books of account, in which he shall enter all indebtedness of the city, and which at all times show the financial condition of the city, the amount of bonds, orders, certificates, or other evidences of indebtedness, issued by the city council: the amount of all bonds, orders, certificates or other evidences of indebtedness, which have been redeemed, and the amount of each outstanding; to countersign all bonds, orders or other evidences of indebtedness of the city, and to keep accurate accounts thereof, stating to whom and for what purpose issued, and the amount thereof; to keep an account with all receiving and disbursing officers of the city, showing the amount they have received from the different sources of revenue, and the amount they have disbursed under the direction of the city council. * * * Such books shall be kept opened to the inspection of all parties interested." Section 3, art. 7, c. 37, Laws 1890.

Among the facts stipulated by the parties are the following:

"That on the 1st day of July, 1890,—that being the date of the issuance of said bonds,—the indebtedness of the said city was as follows: Bonds issued September 1, 1885, $5,000; bonds issued June 1, 1889, $15,000; city warrants outstanding unpaid, $113,001.50; bonds of the board of education of the city of Pierre, $28,000. That none of said indebtedness had been paid, and the same and the whole thereof was outstanding at the time of the issuance of the bonds mentioned herein, and that on said 1st day of July, 1890, there was no money in the city treasury of the city of Pierre with which to pay any of said warrants outstanding as above stated, and amounting to the sum of $113,001.50. That said indebtedness, and the whole thereof, was shown by the public records of the city of Pierre, as required by chapter 37 of the Session Laws of the State of South Dakota for the year 1890; that being the same statute that conferred upon the defendant city power to issue bonds of the character or kind described herein, if any such power existed when the bonds described herein were issued. That the territorial limits of the Pierre school district and the city of Pierre are, and were during all the times mentioned herein, identical. That the value of all the taxable property within the corporate limits of the city of Pierre, as ascertained by the last assessment for state and county taxes previous to the issuance of said bonds on July 1, 1890, was the sum of $960,665, and no more, and that said assessment was on said 1st day of July, 1890, and for a long time prior thereto had been, a matter of public record and open to the public inspection, as required by

said chapter 37 of the Session Laws of the State of South Dakota for the year 1890; that being the same statute that conferred upon the defendant city power to issue bonds of the character or kind described herein, if any such power existed when said bonds were issued. That 5 per cent. of the sum of $960,665, which latter sum was the total value of the taxable property in said city as aforesaid on July 1, 1890, is the sum of $48,033.25. That prior to said 1st day of July, 1890, when said bonds were issued, and in addition to the liabilities hereinbefore mentioned, said city had entered into a contract with the Pierre Waterworks Company whereby said city had agreed to pay the sum of $7,775, each year until the year 1909 for hydrant rentals, and said city did not, at or before entering into said contract, levy an annual tax to pay the same. That no direct or other annual tax was levied by said city at or before the time of the issuance of said bonds sufficient to pay either the interest or principal thereof when due, and that no provision whatever was made at or before the issuance of said bonds for the collection of an annual tax sufficient to pay the indebtedness incurred by the issuance of said bonds when the same should become due, nor to pay the interest upon the same when due."

In addition to the facts stipulated, the court found specially the following facts:

"Second. The court further finds that the bonds from which the coupons sued on herein were detached were made, executed, and delivered to the National Bank of Commerce of Pierre, South Dakota, on the 1st day of July, 1890. That said bonds were by defendant city sold and delivered to said National Bank of Commerce for the agreed consideration of $25,950 in cash, which sum was paid in money to the treasurer of defendant city; and that none of said bonds was exchanged for warrants or other evidences of indebtedness of defendant city. Third. That the proceedings of the city council of defendant city in offering for sale and selling said bonds were had at a regularly adjourned meeting thereof. That there were present and bidding on said bonds, besides said National Bank of Commerce of Pierre, representatives of two companies dealing in bonds in Chicago, Illinois, and one company dealing in bonds in Kansas City, Missouri. That the proceedings had at said meeting, showing the sale of said bonds to have been for cash, and not in exchange for outstanding warrants or other evidences of indebtedness of said city, were duly entered in the record books of said city council containing the minutes of its various meetings, and said proceedings have ever since remained of record therein, and open to public inspection. Fourth. That the proceeds of said sale of said bonds were paid in cash into the treasury of defendant city on July 30, 1890. That on the 31st day of July, 1890, outstanding warrants of said city to the amount of $10,853.24 were paid off and discharged out of the proceeds of the sale of said bonds, and that during the month of August, 1890, there were paid off and discharged out of said funds the outstanding warrants of said city, upon the dates and in the amounts following, to wit: August 1st, $106.24; August 2d, $1,810.78; August 4th, $531.21; August 5th, $7,436.91; August 7th, $106.24; August 8th, $1,593.62; August 12th, $531.21; August 19th, $637.45; August 26th, $106.24; August 30th, $106.24. That no warrants or other evidences of indebtedness of said city were paid out of said funds prior to July 31st, 1890, nor at any time during the months of July or August, 1890, except as stated and found herein."

The following is a copy of the bond sued on:

"United States of America.

"Number ———.                                                                $500.

"State of South Dakota.    County of Hughes.    City of Pierre.

"The City of Pierre, for value received, hereby promises to pay to the bearer of this bond on the first day of July, 1910, or on the first day of July, 1900, at said city's option, the sum of five hundred dollars, at the office of the city treasurer of the city of Pierre, with interest at the rate of six per cent. per annum, payable semiannually, on the first day of July and January

in each year, upon the presentation and surrender of the coupons hereunto attached. This bond is one of a series of bonds amounting to twenty-five thousand dollars issued for the purpose of funding the outstanding indebtedness of the city, in pursuance of the general incorporation laws of the state of South Dakota, approved March seventh, 1890, adopted by said city, and an ordinance of said city of Pierre entitled 'An ordinance to issue bonds for the purpose of funding and paying the outstanding indebtedness of the city of Pierre,' approved April the twenty-fourth, 1890, and a vote of the electors in favor of issuing said bonds, by a majority of the legal votes cast at a special election duly held in said city on the third day of June, 1890."

Under the constitutional and statutory provisions above set out, and the facts agreed upon by the parties and specially found by the court, the following propositions of law, which are irrefragably established by repeated decisions of the supreme court of the United States, are applicable to this case:

First. That, where the constitution of the state prohibits the cities of the state from incurring an indebtedness beyond a given per cent. upon the assessed value of the taxable property of the city, bonds issued in excess of that limit will, upon due proof of that fact, be declared void.

Second. That where there is no recital in the bonds to the effect that they do not exceed the constitutional limit of indebtedness, and the assessment roll of the city issuing the bonds, when taken in connection with the official public record of the indebtedness of the city, kept in pursuance of law, discloses the fact that they are in excess of the constitutional limit of indebtedness, then the general recital in the bonds that they are "issued for the purpose of funding the outstanding indebtedness of the city, in pursuance of the general incorporation laws of the state * * *" and "an ordinance of the said city, * * *" will not estop the city from showing that the bonds exceed the amount of the constitutional limit of indebtedness, and when that fact is shown they are void in the hands of every one, including bona fide purchasers for value. Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 625; Sutliff v. Commissioners, 147 U. S. 230, 13 Sup. Ct. 318, 37 L. Ed. 145. In Lake Co. v. Graham, supra, the supreme court said:

"The recitals of the bonds were merely to the effect that the issue was 'under and by virtue of, and in full compliance with,' the statute; 'that all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of this bond'; and that the issuing was 'authorized by a vote of a majority of the duly qualified electors,' etc.; no express reference being made to the constitution, nor any statement made that the constitutional requirements had been observed. There is, therefore, no estoppel as to the constitutional question, because there is no recital in regard to it. Supervisors v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517."

This declaration of the law is distinctly reaffirmed in the late case of Gunnison Co. Com'rs v. E. H. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689, where all the cases in that court are reviewed by Mr. Justice Harlan, and supposed conflicting decisions reconciled, and these two rules deduced therefrom: (1) That where the recital in the bonds is to the effect that they are issued under and by virtue of, and in full compliance with, the statute or laws of the

state, or other equivalent recitals, the county or city issuing the bonds is not estopped from showing that the constitutional limit of indebtedness had been reached before the bonds were issued, and when that fact is shown the bonds are void in the hands of every one; (2) but, where the bonds contain an express recital to the effect that the debt thereby created does not exceed the limit prescribed by the constitution, then the county or city is estopped from asserting, as against a bona fide holder for value, that the contrary was the fact. The majority of the court have erroneously applied to this case the rule that applies only when the bonds contain the recital that the constitutional limit of indebtedness has not been exceeded in their issue. The bonds in this case contain no such recital, or its equivalent. The only cases cited in point to support the ruling of the court are the previous erroneous rulings of this court, which conflict with one of the previous decisions of this court. Geer v. School Dist., 38 C. C. A. 392, 97 Fed. 732. It is confidently asserted that no decision of the supreme court can be found to support the ruling of the majority of the court on this point upon the facts in this case. Certain it is that the rules above given are distinctly and emphatically stated to be the law by that court, after an exhaustive review of all the cases by Mr. Justice Harlan, in Gunnison Co. Com'rs v. E. H. Rollins & Sons, supra, which is the last expression of opinion by that court upon the subject.

Third. That, where the indebtedness of a city exceeds the constitutional limit of indebtedness, the issue and sale for cash of funding bonds increases the indebtedness of the city, and the bonds are void. Doon Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, 35 L. Ed. 1044; Shaw v. School Dist., 23 C. C. A. 169, 77 Fed. 277; Keene Five-Cent Sav. Bank v. Lyon Co. (C. C.) 97 Fed. 159.

The majority of the court have formulated, and placed in a headnote to their opinion, these two propositions:

"(5) The certificate upon the face of municipal bonds that they have been issued, in pursuance of legislative authority, for the purpose of funding the indebtedness of the city, is a declaration that they have been issued for the purpose of funding a valid debt in the method prescribed by law, and that they neither create nor increase any indebtedness of the municipality; and, as against a bona fide purchaser, they estop the municipality from denying this declaration. (6) When an innocent purchaser buys of others than the municipality and its agents its negotiable bonds, which recite that they were issued to fund the debt of the municipality, the question of excessive indebtedness does not arise, and the purchaser is not required to consider or inquire concerning it."

These propositions are in the very teeth of the decisions of the supreme court of the United States and a previous decision of this court. Over against these utterances of the majority I place the following clear and explicit utterances of the supreme court of the United States in the Doon Tp. Case:

"The constitution of Iowa (article 11, § 3) ordains as follows: 'No county, or other political or municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such county or corporation—to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness.' The scope and meaning of this pro-

vision of the fundamental and paramount law of the state are clear and unmistakable. No municipal corporation 'shall be allowed' to contract debts beyond the constitutional limit. When that limit has been reached, no debt can be contracted 'in any manner, or for any purpose.' The limit of the aggregate debt of the municipality is fixed at five per cent. of the value of the taxable property within it; and that value is to be ascertained 'by the last state and county tax lists,' which are public records, open to all, and of the contents of which all are bound to take notice. The prohibition is addressed to the legislature, as well as to all municipal boards and officers, and to the people, and forbids any and all of them to create or to give binding force to any debts of the corporation in excess of the limits prescribed. The prohibition extending to debts contracted 'in any manner, or for any purpose,' it matters not whether they are in every sense new debts, or are debts contracted for the purpose of paying old ones, so long as the aggregate of all debts, old and new, outstanding at one time, and on which the corporation is liable to be sued, exceeds the constitutional limit. The power of the legislature in this respect being restricted and controlled by the constitution, any statute which purports to authorize a municipal corporation to contract debts in any manner or for any purpose whatever in excess of that limit is to that extent unconstitutional and void. By the terms of the statute of Iowa of 1880 (chapter 132) under which the bonds in question were issued, any independent school district or district township, having a bonded indebtedness outstanding, is authorized to issue negotiable bonds for the purpose of funding that indebtedness; and 'the treasurer of such district is hereby authorized to sell the bonds provided for in this act at not less than their par value, and apply the proceeds thereof to the payment of the outstanding bonded indebtedness of the district, or he may exchange such bonds for outstanding bonds, par for par.' There is a wide difference in the two alternatives which this statute undertakes to authorize. The second alternative of exchanging bonds issued under the statute for outstanding bonds, by which the new bonds, as soon as issued to the holders of the old ones, would be a substitute for and an extinguishment of them, so that the aggregate outstanding indebtedness of the corporation would not be increased, might be consistent with the constitution. But under the first alternative, by which the treasurer is authorized to sell the new bonds and apply the proceeds of the sale to the payment of the outstanding ones, it is evident that, if (as in the case at bar) new bonds are issued without a cancellation or surrender of the old ones, the aggregate debt outstanding, and on which the corporation is liable to be sued, is at once and necessarily increased, and, if new bonds equal in amount to the old ones are so issued at one time, is doubled, and that it will remain at the increased amount until the proceeds of the new bonds are applied to the payment of the old ones, or until some of the obligations are otherwise discharged. It is true that if the proceeds of the sale are used by the municipal officers, as directed by the statute, in paying off the old debt, the aggregate indebtedness will ultimately be reduced to the former limit. But it is none the less true that it has been increased in the interval, and that unless those officers do their duty, the increase will be permanent. It would be inconsistent alike with the words and with the object of the constitutional provision, framed to protect municipal corporations from being loaded with debt beyond a certain limit, to make their liability to be charged with debts contracted beyond that limit depend solely upon the discretion or the honesty of their officers."

In the case at bar the bonds were sold for cash, a large portion of which was not used for the redemption of outstanding indebtedness. Upon the facts of this case, it falls exactly within the doctrine laid down by the supreme court of the United States in the Doon Tp. Case, supra. To justify the overruling of the judgment of the supreme court, the majority cite two erroneous opinions of this court, in one of which it is said, in substance, that there was a strong dissent in the Doon Tp. Case, and that the opinion of the minority of the court in that case is the law, and that there is no reason to suppose the ma-

jority of the court will adhere to its error. The attitude of the majority of the court on this question is an unseemly one. It is a distinct avowal that they will not be bound by the decisions of the supreme court of the United States unless those decisions accord with their views of the law. If such judicial insubordination should be indulged by all inferior courts, the country would speedily be precipitated into a condition of judicial anarchy. The suggestion that the judgment of the supreme court in the Doon Tp. Case is entitled to any less consideration because there was a strong dissent is wholly untenable. The judgment of the majority of the court has the same conclusive and binding force as if it expressed the unanimous judgment of the court. This rule, so essential to a due and orderly administration of justice, has never before been doubted. The judgment of the circuit court should be reversed, and the cause remanded, with instructions to enter judgment for the defendant.