Willie, Chief Justice.
The city of Paris purchased of the ^Silabee Manufacturing Company” a steam fire engine, hose cart and hose, for six thousand six hundred and twenty-five dollars, paying one thousand dollars of the amount in a fire extinguisher, one thousand on'e hundred and twenty-five dollars in cash, furnished by the citizens of Paris, and for the remainder 'executed eighteen bonds, each for two hundred and fifty dollars, dated February 10, 1877, due ten years after date, with eight per -cent interest, payable annually. To these were attached coupons Covering the interest accruing upon the bonds. This suit was ¡brought to recover the amount of some of the matured coupons. There was an alternative prayer for the value of the property hold, to the city, in case the plaintiff was held not entitled to Recover upon the coupons. The suit was by Gould, who claimed to have purchased the bonds from the party to whom they were issued.
*517 The bonds recited the purpose for which they were issued, and also that they were authorized by ordinance number forty-five of the city council of Paris. This ordinance authorized the execution and delivery of the bonds and coupons in discharge of the balance due from the city upon the purchase; and further provided for an annual tax of one-tenth of one per cent on the assessed value of the city’s taxable property for the purpose of paying the principal and interest of said bonds. It was also a special provision of the ordinance that no part of the current expense fund, nor any part of the interest and sinking fund provided for the payment of the .principal and interest, or the old debt, should be used or held responsible for the bonds and coupons issued under the ordinance; and the acceptance of the bonds by the company’s agent was to be construed as a consent to this provision.
The city, in defense, claimed that there was no power under "the Constitution and laws to issue the bonds; and that limitation barred the. claim for the value of the property purchased. The city also relied upon the provision of the ordinance that no part of the current expense fund should be used to pay the bonds, and that of this the appellant had notice, and prayed that the bonds be brought into court and canceled. Other defenses were set up and the plaintiff filed exceptions to the various pleas of the defendant, all of which were overruled. These it will not be necessary to recite.
It was proved that the city had for three years collected the one-tenth of one per cent authorized by the ordinance, and had applied it to the payment of the coupons and two per cent sinking fund on the bonds, till enjoined by the district court; and that about three hundred dollars of the amount thus collected was still in the treasury. It was shown, too, that the indebtedness of the city at the date of the bonds and ordinance did not amount to six per cent of the taxable property of the city.
The cause was submitted to the district judge, who held that the.city had no power to create the debt or issue the bonds, and that the plaintiff could not recover upon the bonds or the value of the engine; but as the city having assessed and collected taxes to pay the bonds, and three hundred dollars still remaining in the treasury, which had been voluntarily paid by the tax payers, the city should be held a trustee for plaintiff for that sum. Judgment was rendered for plaintiff for the three hundred dot- *518 lavs, and canceling the bonds and coupons still in the hands of the plaintiff, and the latter has appealed to this court.
The purchase of the engine, the passage of the ordinance, and the .execution of the bonds were contemporaneous acts, all occurring on the tenth of April, 1877. They were parts of the same transaction, and must be construed together in arriving at the rights and obligations of the parties to the contract. The city purchased the engine, paying part of the purchase money in cash, or its equivalent, and executing its coupon bonds for the balance. According to the terms of the ordinance these bonds were to discharge this balance, and they were to be paid by the annual levy of an ad valorem tax of one-tenth of one per cent, on the taxable property of the city. No part of the current expense fund was to be used in their payment. The Silsby Manufacturing Company accepted the bonds in discharge of the balance due it, and hence became bound to look to the levy of this particular tax for the payment of the bonds and the indebtedness represented by them, and agreed that no part of the current expense fund should be used in payment of them. These were the features of the contract important to a decision of this case.
The recitation in the bonds that they were issued in pursuance of the ordinance, which was described by number, date and caption, and open to the inspection of the world, put every one dealing in these bonds upon full notice of the ordinance by virtue of which they were issued. Hence the plaintiff, as well as the Silsby Manufacturing Company, must be treated as agreeing to take the bonds in discharge of the indebtedness, and not look to the current expense fund for their payment.
It is a principle of law sustained by the highest authority, that when a municipal corporation contracts a debt to bo paid by taxation, if it has not the power to levy the tax the debt can not be enforced against it. “The right to contract must be limited by the right to tax; and, if in the given case no tax can lawfully be levied to pay the debt the. contract itself is void for want of authority to make it. * * The validity of a contract which can only be enforced by a resort to taxation, depends on the power to levy the tax for that purpose.” (Loan Association v. Topeka, 20 Wall., 660.
As the present debt was to be paid by a resort to taxation, and tíre levy was not to be of taxes devoted to the payment of current expenses, the vital question is: Did the city of Paris have *519 the power to levy any other character of tax for the purpose of paying these bonds and coupons on the debt which they represented?
Article 420 of our Revised Statutes, which is but a re-enactment of section 76 of the act of March 15, 1875, allows cities to appropriate so much of their revenues, no matter from what source derived, as may be necessary for the purpose of retiring and discharging their accrued indebtedness, and for the purpose of improving the public markets and streets, erecting and conducting city hospitals, city hall, water works, etc., as they may from time to time deem expedient. It also allows them in furtherance of these objects to borrow money and issue coupon bonds of the city therefor, provided, that the aggregate amount of the bonds issued shall, at no time, exceed six per cent of the value of the property within the city subject to ad valorem tax.
The act of 1875 was in force when our present Constitution took effect, and remained in force threreafter and at the time this contract was made except in so far as it was repugnant to the Constitution. (Gen. Prov., see. 48.) Admitting therefoi e that the languag e of the above section authorized the imposition of a tax to pay a debt contracted by a city for a fire engine, the authority conferred was effectual on February 10, 1877, only in the event that it was not in contravention of the then existing Constitution. In testing this question, we have only to examine such provisions of our Constitution as are applicable to cities of ten thousand inhabitants or less; for although there was no proof as to the population of Paris on the tenth of February, 1877, yet as the plaintiff was seeking to coerce the city into the exercise of a power which it can possess only through the organic or statute law of the State, the burden was upon him to show that this power had been granted. If granted to some cities and not to others, it was in the necessary line of his proof to show that Paris was of the class thus favored by the State. Having failed to show that Paris contained more than ten thousand inhabitants he can not claim for it any powers specially granted to cities of that size, which are not conferred upon cities of less population.
In our view two sections only of our State Constitution have any bearing upon the question before us. One of these is section 4, article 11, and reads as follows: “ Cities and towns having a population of ten thousand inhabitants or less, may be chartered alone by general law. They may levy, assess and *520 collect an annual tax to defray the current expenses of their local government, but such tax shall never exceed, for any on© year, one-fourth of one per cent, and shall be collectible only 'in current money. And all license and occupation tax levied, and all fines, forfeitures, penalties and other dues accruing to 'cities and towns, shall be collectible only in current money.” "The other is section 9, article 8, and as it existed when the present contract was made, read as follows: “The State tax on property, exclusive of the tax necessary to pay the public debt, shall never exceed fifty cents on the one hundred dollars valuation, and no county, city or town, shall levy more than one-half of said State tax except for the payment of debts already incurred, and for the erection of public buildings, not to-exceed fifty cents on the one hundred dollars in any one year, and except as in this Constitution,otherwise provided.”
The first of these sections contains a grant of power to levy taxes to a specified extent for a particular purpose, and, if it stood alone, might be construed not to prohibit taxation for other objects, if authorized by the Legislature. But the other section ds clearly prohibitive, and fixes the maximum of ad valoremtaxation, whether levied by cities, counties or towns, at one-half of the State tax, with certain exceptions. The only exception named in the section itself is the tax for the erection of public buildings.
If there be other exceptions they are to be ascertained by reference to other portions of the Constitution. The only section claimed as making an exception to the general rule laid down in section 9, article 8, is the above recited section 4 of the eleventh article of the Constitution, but this can not, in a case Where the State has levied fifty cents on the one hundred dollars, be said to fix a maximum different from that prescribed in the other section. Hence, in such a case it can not be said to be an exception so far as the maximum per cent of taxation is concerned. If the State levies less than fifty cents on the hundred dollars, then, doubtless, a city of ten thousand inhabitants or less could still levy one-fourth of one per cent by virtue of ¡article 11, section 4. A different maximum could be prescribed, Wd the special grant of the last named section would prove an exception to the general grant contained in the other. (Lufkin v. Galveston, 63 Texas, 657.) In the case just cited it was held that the city of Galveston, containing, as it did, over ten thousand inhabitants, could, by authority of the Constitution, levy a *521 tax of one hundred and six cents on the hundred dollars, that amount being allowed by the special authority given in article 11, section 5, of the Constitution. Article 8, section 9, was held to he the general rule as to taxation which would govern in all cases where there were no exceptions prescribed; and a different maximum being prescribed for cities of over ten thousand inhabitants, they were entitled to tax up to that maximum. The converse of this proposition is also true, that where the limit is the same, the one clause is no exception to the other, and this is the case so far as the smaller class of cities is concerned.
The limitation to one-half the State tax applies to such taxes as are levied for city purposes, which would include current expenses. Reading the two sections together, a city of the smaller class could levy one-fourth of one per cent for current expenses alone, but could not go beyond that amount for any and all corporate purposes, saving those made the subject of special exceptions by the Constitution itself. In other words, the Constitution said that these smaller cities might levy twenty-five cents on the hundred dollars for current expenses, but when they have' done so they have reached the limit beyond which they are prohibited to go, and they shall levy no other tax except for the other purposes mentioned in the Constitution. If the State should levy less than fifty cents on the hundred dollars and their limit should thereby be reduced to less than twenty-five cents on the hundred dollars, they may still impose that amount of tax for current expenses. Should they not need so large a tax for these expenses, they might levy a smaller amount, and also another tax for other separate purposes, provided that the two together did not exceed the one-half of the State tax, or twenty-five cents on the hundred dollars.
Thus stood the Constitution and the statute law at the time the present contract was made and the bonds issued. The Legislature had not at that time the power to authorize the city of ¡Paris to levy the proposed tax, when she had already levied one-fourth of one per cent for current expenses. The Constitution forbidding it, the legislative act granting the power must be construed inapplicable to the city of Paris in its then condition. The city having no power to levy the tax for the payment of the bonds or the indebtedness for which they were given, the contract itself was void, and the court below did not err in its con,elusions upon this question.
It is unnecessary for us to determine whether the plaintiff *522 could recover in a proper case upon an implied contract to pay for the engine. The contract implied from one person’s obtaining the property of another without compensation is that he will pay for it immediately. The law implies nothing as to payment at a future date. That must arise upon express contract, or some course of dealing between the parties or like circumstances. This engine was obtained by the city on the tenth of February, 1877. The right of action upon the implied contract was barred at the expiration of two years from that time. This suit was commenced in 1883, nearly six years thereafter. The statute of limitations was pleaded by demurrer, the other fact appearing in the petition, and the case upon the law and the facts was submitted to the judge. He could not have found otherwise than for the defendant upon this issue in the state of the pleadings.
Opinion delivered June 21, 1887.
We think, however, that the court erred in rendering judgment against the city for the three hundred dollars produced by the unlawful tax, and remaining undisposed of in the treasury. This money was collected to pay a supposed debt, and was paid to the city in trust that it would be paid over to the plaintiff only in the event that he held a valid claim against it, otherwise its collection would doubtless have been resisted. If, therefore, the city held it in trust «for the plaintiff, this trust was accompanied with the condition stated. This suit having developed the fact that the debt did not exist, the city could not pay the money over to the plaintiff 'without a violation of this condition; and it follows, of .course, that he could not have a judgment for its recovery.
For this error the judgment will be so reformed as to deny a recovery of the amount decreed in favor of the appellant, and in all other respects it will be affirmed.

Affirmed.

Justice Gaines did not sit in this case.