## CITY OF COLUMBUS v. WOONSOCKET INSTITUTION OF SAVINGS.

### (Circuit Court of Appeals, Fifth Circuit. February 25, 1902.)

### No. 1,055.

1. MUNICIPAL CORPORATIONS—VALIDITY OF BONDS—TEXAS CONSTITUTION AND STATUTES.

    The constitution of Texas (article 11, §§ 5, 7) provides that no debt shall ever be created by any city or town unless provision is made at the time of creating the same for levying and collecting annually a sufficient tax to pay the interest thereon, and create a sinking fund of at least 2 per cent. Rev. St. Tex. 1879, art. 370 et seq., vests in city councils the power to levy and collect ad valorem, poll, and license or occupation taxes, to make all appropriations, create special funds, and to have, in general, the management and control of the finances of the city. The council of a city passed an ordinance authorizing the issuance of waterworks bonds, and appropriating $3,000 per annum out of the general revenues of the city for the payment of the interest on such bonds, and the creation of a sinking fund of 4 per cent. It directed the treasurer to open a special account for the purpose, and to place therein each year all revenues of the city, from whatever source, until he should have yearly to the credit of such fund the sum of $3,000. At the same time it passed an ordinance declaring that all taxes theretofore levied, whether ad valorem, poll, occupation, or otherwise, were levied for the purpose of paying the interest, and providing a sinking fund for payment of the principal, of such bonds, and another making an annual levy of an ad valorem tax to the constitutional limit. No levy of other taxes was made at that time. *Held,* that, under the constitutional provisions cited, the bonds were valid to the amount, and only to the amount, that the tax contemporaneously levied would provide for, by paying the interest and creating a sinking fund of 2 per cent. per annum; the same to be determined by the last preceding assessment.

2. SAME—PARTIAL INVALIDITY OF BOND ISSUE—APPORTIONMENT.

    Where a city has issued bonds to an amount in excess of its constitutional authority, all of which were created by the same ordinance, and sold at the same time, each bond is valid to the extent of its proportionate share of the debt lawfully contracted.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This is a suit against the city of Columbus, a municipal corporation of the county of Colorado, state of Texas, to recover on municipal bonds issued by said corporation in the year 1883 for the purpose of erecting waterworks. The issue was $25,000 in coupon bonds, of $500 each, bearing interest at 8 per cent. per annum, payable semiannually; one-half falling due in 15 years; the other half, in 25 years. Interest was paid on the whole issue up to December 8, 1893, after which the city neglected and refused to pay. The present suit is to recover interest on the whole issue in default, and the one-half of the principal now due. In the circuit court, trial by jury was waived, and the case submitted to the court, which made a finding of facts, and thereon rendered judgment for the full amount of the interest due, and one half the principal; reserving the right of the bondholders to hereafter recover principal and interest on the other half of the issue. The city of Columbus sues out this writ of error, contending in this court, as in the court below, that the city of Columbus had no power to issue the bonds sued upon, and that the said bonds were void, having been issued in violation of the constitution of the state of Texas in force at the time of their issuance.

    M. E. Kleberg, for plaintiff in error.

    J. W. Terry, Rudolph Hatfield, and C. C. Everett, for defendant in error.

    Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). From the facts as found by the trial judge, it appears that the city of Columbus, a municipal corporation in Colorado county, state of Texas, was in the year 1883 a city of less than 10,000, and about 3,000, inhabitants, with taxable property within its limits of the assessed value of $600,000, upon which was levied a tax of one-fourth of 1 per cent., and for that year there was levied and collected as occupation taxes the sum of $1,350, and as poll taxes the sum of $150, and during the same year the revenues of the city, collected and received in the shape of fines, amounted to $225; making a total revenue for the year 1883 of the said city of $3,225. It further appears that the current expenses of the city for the year for salaries and fees of its marshal and collector, per diem, of the council, etc., did not exceed the sum of $1,100, which would leave as net revenues for the year 1883 the sum of $2,115. On the 8th day of June of that year the city council of said city adopted an ordinance providing for the issuance by the city of coupon bonds to the amount of $25,000, to provide means for the erection of waterworks, and on June 15th following the said city council adopted an ordinance levying an ad valorem tax as follows:

"There shall be levied and collected, an annual ad valorem city tax of ¼ of 1 per centum of the cash value thereof, estimated in lawful money of the United States, on all the movable property and all the real property situated and owned in this city, on the first day of January of each and every year, except so much thereof as may be exempted by the constitution and laws of the state of Texas, and by ordinances of this city."

On July 30, 1883, the city council of said city, by ordinance duly passed, repealed the aforementioned ordinance of June 8th, and at the same time passed a new ordinance whereby the said city of Columbus created a debt for the purpose of providing waterworks for the said city in the sum of $25,000, and authorized to be issued, to represent the same, coupon bonds for the said amount, bearing 8 per cent. interest per annum from the 8th day of June, 1883, payable semiannually,—one half to fall due in 15 years, and the other half to fall due in 25 years, from June 8, 1883. At that time the constitution of the state contained provisions as follows:

"Sec. 9. The state tax on property, exclusive of the tax necessary to pay the public debt, shall never exceed fifty cents on the one hundred dollars valuation, and no county, city or town shall levy more than one-half of said state tax, except for the payment of debts already incurred, and for the erection of public buildings, not to exceed fifty cents on the one hundred dollars in any one year, and except as in this constitution is otherwise provided." Article 8.

"Sec. 4. Cities and towns having a population of ten thousand inhabitants or less, may be chartered alone by general law. They may levy, assess and collect an annual tax to defray the current expenses of their local government, but such tax shall never exceed, for any one year, one-fourth of one per cent., and shall be collectible only in current money. And all license and occupation tax levied, and all fines, forfeitures, penalties and other dues accruing to cities and towns, shall be collectible only in current money." Article 11.

"Sec. 5. Cities having more than ten thousand inhabitants may have their charters granted or amended by special act of the legislature, and may levy, assess and collect such taxes as may be authorized by law, but no tax for any purpose shall ever be lawful, for any one year, which shall exceed two

and one-half per cent. of the taxable property of such city; and no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent. thereon." Article 11.

"Sec. 7. * * * But no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent. as a sinking fund. * * *" Article 11.

Statutory provisions of the state in 1883 granting and regulating the powers of cities and towns suggested as pertinent to the questions in hand, and as shown by Rev. St. 1879, were as follows:

"Art. 370. The city council shall have the management and control of the finances and other property, real, personal and mixed, belonging to the corporation.

"Art. 371. The city council shall have power to appropriate money, and provide for the payment of debts and expenses of the city.

"Art. 372. To provide by ordinance special funds for special purposes, and to make the same disbursable only for the purpose for 'which the fund was created; and any officer of the city misappropriating said special fund shall be deemed guilty of malfeasance in office, and shall, on complaint of any one interested in said funds misappropriated, be removed from office, and be incapable thereafter to hold any office in said city."

"Art. 374. To provide, or cause to be provided, the city with water, to make, regulate and establish public wells, pumps and cisterns, hydrants and reservoirs, in the streets or elsewhere within said city, or beyond the limits thereof, for the extinguishment of fires and the convenience of the inhabitants, and to prevent the unnecessary waste of water."

"Art. 419. To pass all necessary ordinances to provide for funding the whole or any part of the existing debt of the city or of any future debt, by canceling the evidences thereof, and issuing to the holders or creditors notes, bonds or treasury warrants, with or without coupons, bearing interest at any annual rate not to exceed ten per cent. The council shall also provide by ordinance for issuing the bonds of the city in such sums as may be agreed upon for railroad subsidies heretofore voted, or that may be hereafter voted in accordance with the laws of this state.

"Art. 420. To appropriate so much of the revenues of the city, emanating from whatever source, for the purpose of retiring and discharging the accrued indebtedness of the city, and for the purpose of improving the public markets and streets, erecting and conducting city hospitals, city hall, water works, and so forth, as they may from time to time deem expedient; and in furtherance of these objects they shall have power to borrow money upon the credit of the city, and issue coupon bonds of the city therefor in such sum or sums as they may deem expedient to bear interest not exceeding ten per cent. per annum, payable semi-annually at such place as may be fixed by city ordinance: provided, that the aggregate amount of bonds issued by the city council shall, at no time, exceed six per cent. of the value of the property within said city subject to ad valorem tax."

"Art. 428. The city council shall have power to levy and collect an annual poll tax, not to exceed one dollar, of every male inhabitant of said city over the age of twenty-one years (idiots and lunatics excepted), who is a resident thereof at the time of such annual assessment.

"Art. 429. The city council shall have power to levy and collect taxes commonly known as licenses, upon trades, professions, callings and other business carried on; and upon carriages, hacks, coaches, buggies, drays, carts, wagons and other vehicles used in said city, when the same are for public use; and each and every person and firm engaging in the following trades, professions, callings and business, among others, shall be liable to pay such license tax; but this enumeration shall not be construed to deprive the city council of the right and power to levy and collect other license taxes, and from other persons and firms, under the general authority herein granted."

At the same time that the ordinance authorizing the issuance of the bonds aforesaid was passed, the city council also passed an ordinance wherein it was provided:

"That all taxes for the purpose of raising revenues for the city of Columbus, ad valorem, poll, occupation, or otherwise, heretofore levied, are hereby declared to be levied for the purpose of paying the interest and providing a sinking fund of four per cent. for the payment of the water works bonds, provided for by ordinance adopted on the 30th day of July, 1883, and the city clerk is hereby ordered to furnish the mayor a certified statement of the income of the city from all sources of revenue."

The ordinance authorizing the issuance of the bonds, among other things, provided:

"Sec. 5. That three thousand dollars per annum is hereby appropriated out of the general revenues of the city for the payment of the interest on said bonds, and the creating of a sinking fund of four per cent. for the payment of the principal as in this ordinance provided.

"Sec. 6. The city treasurer shall immediately open in his books an account to be known as the 'Waterworks Fund Account,' and he shall place, each year, to the credit of said account, all revenues of the city, from whatever source, received by him, until he shall have yearly to the credit of said account the aforesaid sum of three thousand dollars, which fund shall not be drawn upon for any other purpose than the payment of the interest, semi-annually, upon said bonds and the payment of the said bonds at maturity, provided, that after the redemption of twelve thousand and five hundred dollars of said bonds, the treasurer shall set only aside and credit to the said fund fifteen hundred dollars per annum until the final payment of all of said bonds.

"Sec. 7. The fund herein created is set apart exclusively for the payment of the principal and interest of the bonds herein authorized and required to be issued, and no part of the same shall ever be diverted to any other purpose."

The constitution of the state of Texas (sections 5, 7, art. 11, above quoted) forbids the creation of any debt by any city or town, unless, at the same time the debt is created, provision be made to assess and collect annually a sufficient sum or tax to pay the interest thereon, and create or provide a sinking fund of at least 2 per cent. These two provisions of the constitution apply to all cities and towns alike, without regard to the number of their inhabitants. City of Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593. It is well settled that the creation of a debt by any city or town in the state of Texas, and the bonds issued to evidence such debt, without a compliance with the said provisions of the constitution, are wholly void. See Millsaps v. City of Terrell, 8 C. C. A. 554, 60 Fed. 193; Gould v. City of Paris, 68 Tex. 517, 4 S. W. 650; City of Terrell v. Dessaint, supra; Citizens' Bank v. City of Terrell, 78 Tex. 450, 14 S. W. 1003; Nolan Co. v. State, 83 Tex. 182, 195, 17 S. W. 823. As recited above, the provision made at the time for payment of the interest, and to create a sinking fund for the payment of the bonds in suit, consisted of the declaration by ordinance that all taxes for the purpose of raising revenues for the city of Columbus—ad valorem, poll, occupation, or otherwise—theretofore levied were levied for the purpose of paying the interest and providing a sinking fund for the payment of the waterworks bonds, and an appropriation of $3,000 out of the general revenues of the city for the same purpose. The ad valorem tax of one-

quarter of 1 per cent. upon the assessed value of all the movable and immovable property within the limits of the city, levied on June 8, 1883 (the same being the date given to the bonds in suit), appears to have been levied about the time of, and in connection with, the first ordinance providing for the issuance of waterworks bonds; and as that ordinance was repealed in the second ordinance to the same intent and purpose, so far as the levy of that tax goes and is concerned, it may be considered that it was contemporaneous with the creation of the debt, and was so much towards making provision for the waterworks bonds at the time of their issuance, by levying a tax for the payment of interest and to create a sinking fund, as required by the constitution. As to the poll and occupation taxes theretofore levied, the case does not show when, nor at what rate, nor for what amount, nor for what time, the same were levied, and, so far as the said taxes are declared levied for and appropriated to the payment of interest and sinking fund of the waterworks bonds, it is difficult to see how therein was any compliance with the constitutional requirements. Under the statutes in force at the time these waterworks bonds were issued, and as hereinbefore quoted, the city council of the city of Columbus had the management and control of the finances and other property belonging to the corporation; had the power to appropriate money providing for the payment of debts and expenses of the city; to provide by ordinance special funds for special purposes to protect the same; to provide, or cause to be provided for the city, water and waterworks; to provide for funding existing or future debts of the city, issuing therefor certain notes, creditors' notes, bonds, and treasury warrants; to levy and collect an annual poll tax, not to exceed $1 for every male inhabitant of over 21 years; to levy and collect taxes commonly known as "occupation taxes"; and, specially, under article 420, had the power to appropriate the revenues of the city, emanating from whatever source, for general purposes, including erecting waterworks; and, in furtherance thereof, the power to borrow money upon the credit of the city, and issue coupon bonds therefor, in such sums as deemed expedient. It must be understood, however, with regard to all these statutes, that they must be construed and enforced under and in connection with the paramount authority of the constitution, and that in, and making part of, article 420, authorizing the borrowing of money and the issuance of coupon bonds, must be read sections 5 and 7 of article 11 of the constitution. See Gould v. City of Paris, 68 Tex. 511, 4 S. W. 650. This is a sufficient answer to the contention, so earnestly pressed by counsel for appellee, that article 420 is in all respects constitutional, and that it, in connection with other legislative provisions, authorized the issuance of the bonds in suit, based upon a continuous appropriation of the general revenues of the city, made up of ad valorem, poll, and occupation taxes theretofore levied.

The case shows that the revenues of the city from all tax sources amounted to $3,000, all of which was required and was appropriated for the interest and sinking fund of the waterworks bonds; and the counsel for appellant contends with great force that the city council had no power, constitutional or legislative, to pledge for subsequent years all of the city's revenues in payment of a bonded indebtedness,

leaving nothing for necessary alimony, and cites this court in Millsaps v. City of Terrell, supra, and the supreme court of Texas in Citizens' Bank v. City of Terrell, supra. This contention presents a very important question, but it may be pretermitted here, because it does not appear that the city of Columbus provided for the levy and collection of a poll tax or an occupation tax to pay the interest and create a sinking fund for the principal of the bonds in suit; and it does affirmatively appear that the poll and occupation taxes theretofore levied produced more revenue than was required for the alimony of the city.

Our conclusion is that the only lawful and constitutional provision for the payment of the interest, and to create a sinking fund of at least 2 per cent., made at the time the bonds in suit were issued, was the continuing levy of an ad valorem tax of one-fourth of 1 per cent. on all the movable and immovable property situated and owned in the city, and that said bonds are valid to such amount, and to such amount only, as that tax, according to the assessment of 1883, could provide for. This conclusion is in accord with Citizens' Bank v. City of Terrell, supra, which was a case in which the city of Terrell in the same year (1883) issued a series of waterworks bonds based on a levy of taxes and an appropriation of certain general revenues; and as decidedly in point, supporting all our conclusions, we quote from the opinion of the court:

"The command of the constitution that no debt shall be created without at the same time providing for the levy and collection of a tax for its payment was evidently designed not more to insure the payment of honest debts than to admonish the people whose property was being charged with them of that fact. The other provision. limiting the amount of debt that cities can charge themselves with, had its foundation in a wise public policy. These constitutional restrictions were made for observance, not evasion. * * * The command of our constitution is that, when the debt is created, provision shall then be made for levying and collecting a tax to discharge it. It amounts to more than a direction that no debt shall ever be created above such a sum as the directed levy will pay. The constitution will not be obeyed unless it shall be ascertained, when and before a debt is created, whether one-fourth of one per cent. or less on the taxable valuation will annually pay the interest and sinking fund. The debt is not to go beyond what a tax can be levied to pay, and the clause in the constitution that defines how much may be levied shows that it is to be done on a 'valuation,' one meaning of which, given by Webster, is 'appraisement; as a valuation of lands for the purpose of taxation.' * * * There is nothing in the record before us showing when. any. of the bonds were issued, nor whether they were all disposed of at the time, or at different dates. There is nothing to distinguish those issued under the last ordinance from those issued under the first one, unless we can look for that purpose to the numbering of the bonds. The city had no authority to pledge or appropriate any part of the current revenues to the payment of the principal or interest of the debt. That fund is devoted by the constitution to the support of the city government, and is always under the control of the council for that purpose. The net proceeds from the waterworks, if there had been such, would have likewise been under the control of the council, and was not a basis for the creation of debt. The action of the council on the 25th day of June, 1884, was utterly void. The ordinance of the 12th day of December, 1883, was valid for such an amount as a tax of 25 cents upon the $100 of valuation, according to the last-taken assessment of the taxable values of the city, would provide for. If the bonds were delivered at different dates, those first delivered, up to the amount of the debt that the city could lawfully create, should be paid. and the remainder of them should be treated as nullities.

Daviess Co. v. Dickinson, 117 U. S. 657, 6 Sup. 897, 29 L. Ed. 1026. If all of the bonds under the first ordinance were delivered at the same time, so that none of them have priority over the others, the amount of valid debt should be distributed equally between said bonds. McPherson v. Foster, 43 Iowa, 72, 22 Am. Rep. 215. * * * Under the view we take of the law, the original holders, as well as any subsequent holders, of the bonds or coupons, may recover so much of the debt as was lawful." Pages 457, 459, 460, 461, 78 Tex., pages 1005, 1006, 1007, 14 S. W.

As we have found that the bonds in suit are valid to the extent that the ad valorem tax was sufficient to provide the interest and sinking fund, and invalid beyond, the question arises as to the proper judgment to be entered. In Francis v. Howard Co. (before this court in 1893) 13 U. S. App. 126, 4 C. C. A. 460, 54 Fed. 487, a similar question was presented; and, as that case was properly ruled, we quote from Judge Maxey's opinion on circuit, which we fully indorsed, as follows:

"It has been shown that bonds numbered 1 to 35, inclusive, are in part valid, and partly void. The question now arises, is the county liable for the amount of indebtedness within the restricted limit? The supreme court of this state replies in the affirmative. Citizens' Bank v. City of Terrell, supra; Daviess Co. v. Dickinson, supra; Ætna Life Ins. Co. v. Lyon Co. (C. C.) 44 Fed 329. The supreme court of Iowa holds the same view, and in McPherson v. Foster, 43 Iowa, 48, 72, 73, 22 Am. Rep. 215, says: 'As we have seen, the constitutional inhibition operates upon the indebtedness, not upon the form of the debt. The district may become indebted to the amount of $2,057.50 by bond. If the debt exceeds that amount, it is void as to the excess, because of the inhibition upon the power of the district to exceed the limit, and the bonds as to the same excess are void because of the nonexistence of a valid debt therefor. But this restriction does not extend to the sum of $2,057.50, for which the district had power to issue its bonds. That sum is a valid debt. The bonds to that extent are valid. It is no unusual thing for instruments of this character to be partly valid and partly invalid. So far as they secure a lawful debt, they are valid. So far as the debt is unlawful, they are invalid. * * * It appears that the bonds all bear the same date, and were issued, though at different times, as a part of one transaction. They were intended as security for a debt of $15,000 which was attempted to be contracted in building the school house. It cannot be said that, in justice, invalidity should attach to certain particular bonds, while others, to the amount for which the district could lawfully contract indebtedness, should be held valid. Each bond, being but a part of the whole debt, must partake alike of invalidity and validity. It must be partly valid and partly invalid. The whole alleged debt is $15,000. Of this sum, $2,057.50 is valid. Each bond will be valid to the extent it represents a portion of the debt lawfully contracted. Such a sum is the proportion of the amount of the bond as $2,057.50 bears to $15,000; that is, $\frac{2,057.5}{15,000}$ of the principal of each bond is valid and collectible. The interest on each bond is determined by the same rule, or calculated upon the amount of each bond held to be valid.' Howard county could lawfully issue on November 12, 1883, bonds to the amount of $14,982.77. It did in fact issue bonds, partly valid and partly invalid, aggregating $35,000. Bonds to the extent of its power to issue ($14,982.77) became a valid indebtedness against the county, and enforceable by suit. Bonds in excess of that limit or amount are invalid and uncollectible. The thirty-five bonds were all issued and delivered at the same time to Milliken & Co., and they were subsequently bought at the same time by the plaintiff and another citizen of St. Louis. None, therefore, have priority over the others, and the amount of valid debt should be equally distributed among them all. According to the rule laid down by the supreme court of Iowa, each one of the thirty-five bonds of one thousand dollars issued represents a valid indebtedness of four hundred and twenty-eight dollars, and each

coupon of eighty dollars a valid debt of thirty-four dollars and twenty-four cents. * * * Judgment should be rendered for the foregoing amount, with six per cent. interest thereon from date (Gen. Laws Tex. 1891, p. 87, c. 68; constitutional amendment adopted August, 1891), if, indeed, it be proper to enter judgment in favor of the plaintiff for any amount in this suit at law. This question presents a serious difficulty. The supreme court of Iowa, in McPherson v. Foster, supra, and Judge Shiras, in Ætna Life Ins. Co. v. Lyon Co., supra, declined to enter judgment; the latter basing his refusal on the grounds that the rights and equities of the bondholders could only be adjusted by a proper proceeding in equity, with all the parties before the court. Discussing the question, he observed: 'It is argued that the bonds would be valid until the amount needed to refund the enforceable debt had been reached, and that it will be presumed that the bonds were sold in the order of their number. Such a presumption cannot be indulged in under the facts in this case. To settle the equities and rights of the bondholders against the county, and their rights as between themselves, would seem to require the institution of a suit in equity. In this action at law between one owner of part of the bonds and the county, it is beyond the power of the court to hear and determine the question of the order in which the series of bonds was sold, or the application of the proceeds realized from the sales thereof, and whether the facts are such that a certain number of the bonds can be held valid at law, or whether it should not be held that each owner of a bond is equitably entitled to demand his share of the total sum which may be adjudged to be collectible from the county.' Touching this point the supreme court of this state says: 'Neither the pleadings nor the proof in the record before us present the case so as to authorize a judgment of the nature indicated by us as being proper. Strictly speaking, no judgment other than the one from which the appeal was taken could have been rendered. We think it right, however, to give the appellee an opportunity to amend his pleadings, and have the issues so presented as to show what proportion of the debts sued on he may be entitled to recover, under the rules that we here announce.' Citizens' Bank v. City of Terrell, supra. See, also, Daviess Co. v. Dickinson, supra. This court fully concurs in what is said in the cases cited. But the rulings in those cases were predicated upon the particular facts of each case. While in this suit the court entertains serious doubts as to the propriety of entering judgment in behalf of the plaintiff, yet, after giving the question careful consideration, I am impressed with the conviction that such a judgment would be warranted both by the pleadings and proofs. And perceiving no insuperable objection in a case of this kind to the rendition of a judgment in a suit at law, my conclusion is that the plaintiff should recover the amount found due, with legal interest and costs of suit. If he be not permitted to recover all that he claims, he should at least have judgment for the amount to which he is lawfully entitled. Ordered accordingly."

As it thus appears that the appellee is entitled to a judgment, but the amount thereof depends upon estimates and calculations, which, although simple, ought, perhaps, to be settled contradictorily between the parties, the judgment of the circuit court is reversed, and this cause is remanded, with instructions, in due course, to enter a judgment in favor of the appellee in accordance with the views expressed in this opinion.