**HOLMAN, County Judge, et al. v. BROADWAY IMPROVEMENT CO.**
. (No. 1024-4921.)

Commission of Appeals of Texas, Section A.
Dec. 7, 1927.

**1. Counties ⊜⇒113(1)—Right of commissioners' court to contract for sea wall is limited by right to tax.**

Right of commissioners' court of county to contract for construction and strengthening of sea wall must be limited by right to tax.

**2. Counties ⊜⇒192—Levy by commissioners' court of ad valorem taxes equal to 25 cents on $100 valuation for construction and strengthening sea wall held valid without vote of taxpayers; "permanent improvements" (Rev. St. 1925, art. 6830; Const. art. 11, § 7, art. 8, § 9).**

Levy under Rev. St. 1925, art. 6830, by commissioners' court of ad valorem taxes equal to 25 cents on each $100 valuation for construction and strengthening of sea wall *held* valid independently of vote of taxpayers, notwithstanding Const. art. 11, § 7, and article 8, § 9, in view of amendments to section 9 in 1883 and 1890, since "permanent improvements" is broad enough to include "sea walls."

[Ed. Note.—For other definitions; see Words and Phrases, First and Second Series, Permanent Improvement.]

**3. Constitutional law ⊜⇒13—Intent to do useless things or inject conflict into basic law will not be attributed to makers of constitutional amendments.**

In considering amendments to Constitution, court will not attribute to makers of amendments the intended doing of useless things or purpose to inject conflict into terms of basic law.

**4. Constitutional law ⊜⇒18—Makers of constitutional amendments are presumed familiar with terms of affected sections and to know meaning of words newly used.**

Makers of constitutional amendments are presumed to have been familiar with pre-existent and continuing terms of affected sections of Constitution and to have known usual meaning of general words which they selected and newly used.

**5. Constitutional law ⊜⇒14—Constitutional amendments will not be construed to be ambiguous and contradictory if such construction is avoidable.**

Work of those making amendments to Constitution is not to be characterized with ambiguity and contradiction unless that is imperative command of what they left.

**6. Counties ⊜⇒105(2)—County held authorized without vote of taxpayers to accomplish construction and strengthening of sea wall through issue of warrants instead of bonds (Rev. St. 1925, art. 6830).**

County has authority, under Rev. St. 1925, art. 6830, in absence of vote of taxpayers to accomplish, within limits described by statute, construction and strengthening of sea wall through issue of warrants instead of bonds.

Error to Court of Civil Appeals of First Supreme Judicial District.

Petition by the Broadway Improvement Company against E. B. Holman, County Judge, and others, constituting the Commissioners' Court of Galveston County. Judgment for defendants was reversed and rendered by the Court of Civil Appeals (297 S. W. 652), and they bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

D. B. MacInerney, Co. Atty., of Galveston, for plaintiffs in error.

Maco Stewart, of Galveston, for defendant in error.

NICKELS, J. Plaintiffs in error make up the commissioners' court of Galveston county. Defendant in error has property within the county subject to taxation. By the petition it was made further to appear to the district court: (a) For 1926, the commissioners' court, "for the construction of a sea wall" and strengthening same, levied an ad valorem tax equal to 25 cents on each $100 of value—the amount of plaintiff's burden thereunder being $1,000. Levy in like amount and for that purpose is proposed for 1927. (b) Those levies have not been "authorized by a vote of two-thirds of the taxpayers or by any other vote of the taxpayers." (c) The commissioners' court have entered into contracts and have incurred debts for the work contemplated "without funds on hand to pay for same, and without having a vote of the taxpayers for the levy of a tax to pay therefor," and the "cost thereof can and will be met by such levy within less than 4 years." (d) There is a threat of seizure and sale of plaintiff's property to enforce payment of the tax. Upon the facts shown, it is alleged that the contracts, debts, and levy are unlawful, and it is prayed that injunctive relief be given against such "unlawful acts." Defendants excepted to the petition. The exception was sustained, the plaintiff declined to amend, and final judgment for defendants was rendered. On appeal the judgment was reversed and judgment rendered for plaintiff by the Court of Civil Appeals. 297 S. W. 652. Writ of error was allowed, principally, on asserted conflict of that decision with the decision, by the same court, in Moller v. Galveston, 23 Tex. Civ. App. 693, 57 S. W. 1116.

[1] Inasmuch as the "right to contract must be limited by the right to tax" (Loan Ass'n v. Topeka, 20 Wall. 660 [22 L. Ed. 455]; Gould v. City of Paris, 68 Tex. 511, 516, 4 S. W. 650), the discussion may be confined to the latter right.

[2] The legislative act (article 6830, R. S.

1925) unquestionably purports authority for the tax levy independent of a vote of the taxpayers. And that fact immediately projects inquiry about the applicability and effect of section 7, art. 11, and section 9, art. 8, of the Constitution.

The first-named section is now in its original text of 1876. Its form is that of an affirmative grant of authority to a county (or city) "bordering on the coast of the Gulf of Mexico" to "levy and collect such tax for construction of sea walls, breakwaters, or sanitary purposes as may be authorized by law" and to "create a debt for such works and issue bonds in evidence thereof,". conditioned, however, upon pre-existent "vote of two-thirds of the taxpayers therein."

The form contemporaneously given section 9, and the form in which that section remained until September 25, 1883 (Texas Water & Gas Co. v. City of Cleburne, 1 Tex. Civ. App. 580, 21 S. W. 394), is:

"The state tax on property, exclusive of the tax necessary to pay the public debt, shall never exceed 50 cents on the $100 valuation; and no county, city or town shall levy more than one-half of said state tax, except for the payment of debts already incurred, and for the erection of public buildings, not to exceed 50 cents on the $100 in any one year, and except as in this Constitution is otherwise provided." Volume 1, p. liii, Vernon's Sayles' Tex. Civ. Stat. 1914.

If both sections had retained their original forms, there would appear to be application for the rule that "where a power is granted, and the method of its exercise prescribed, the prescribed method excludes all others." Foster v. City of Waco, 113 Tex. 352, 255 S. W. 1104. For in that situation there would have been in section 7 a specific grant of the specific power to construct "sea walls," etc., with funds or credit derived in a definitely prescribed way, and without intimation in section 9 of an alternative authority or method.

[3-5] But in 1883 there began what ripened into a series of amendments to section 9. We are admonished to refrain from attributing to their makers the intended doing of useless things or a purpose to inject conflict into the terms of basic law. Those men, too, are presumed to have been familiar with the pre-existent and continuing terms of section 7 and to have known the usual meaning of the general words which they selected and newly used. Their work is not to be characterized with ambiguity and contradiction unless that be the imperative command of what they left.

In the 1883 amendment these substitutions were made:

(a) "No county, city or town shall levy more than twenty-five cents for city or county purposes, and not to exceed fifteen cents, for roads and bridges, on the one hundred dollars valuation" in lieu of "no county, city or town shall levy more than one-half of said state tax." (b) "Except for the payment of debts incurred prior to the adoption of this amendment, and for the erection of public buildings, street, sewer and other permanent improvements, not to exceed twenty-five cents on the one hundred dollars valuation in any one year" in lieu of "except for the payment of debts already incurred, and for the erection of public buildings, not to exceed fifty cents on the one hundred dollars in any one year."

The general provision, "except as in this Constitution is otherwise provided," at the end of the section was left intact.

By the 1890 amendment (Vernon's, Id.) the exception of "public debts" was taken from the new clause as set out in (b) above, and the clause was otherwise changed so as to read thus:

"And for the erection of public buildings, streets, sewers, waterworks, and other permanent improvements, not to exceed twenty-five cents on the one hundred dollars valuation in any one year."

The general provision, "except as in this Constitution is otherwise provided," was left in its position immediately following the clause last quoted, and after it (in the text) new matter (foreign to any question here) was inserted.

In subsequent amendments the clauses last quoted, with their relative positions in the text, were left as in the 1890 amendment.

It is at once noticeable that in the words "permanent improvements" a term was used which is broad enough in meaning to include "sea walls." It has been suggested that Gould v. City of Paris and Texas Water & Gas Co. v. City of Cleburne, supra, import contra implications. But in both cases the contracts involved were made before the amendment of 1883; in the first case the contract related to purchase of "a steam fire engine, hose cart and hose," and in the other it was plainly intimated that a "waterworks" would be a "permanent improvement," and that the contract would have been valid if the amendment had been effective. It is noticeable, too, that while "sanitary purposes" (a term broad enough to include "sewers") is named in section 7, the construction, etc., of "sewers" out of the 25-cent levy has been provided for, specifically, in section 9 at all times since the 1883 amendment went into effect.

This recurring action touching section 9 and lack of action in direct reference to section 7 impel us to the view that those who made the Constitution in the form and of the substance we now find it intended to make and did make alternative grant with independent method of use for the acquisition and maintenance of those things named in section 7. Each grant and its prescribed method has a separate and noninterfering orbit. So long as there be available for any

of those objects a levy within the 25 cents allowed for "permanent improvements," it may be made and the proceeds devoted to that character of works. If more be desired, there must be first the vote made indispensable in section 7. Forbidden overlapping is precluded by the general exception to be found in section 9 at all points in its history. Supporting analogy is to be found, we think, in Lasater v. Lopez, 110 Tex. 179, 217 S. W. 373, and authority in Moller v. Galveston, 23 Tex. Civ. App. 693, 57 S. W. 1116, as that case is explained by the Court of Civil Appeals in its opinion in the present one.

[6] The authority of the county, absent a "vote" of the "taxpayers," to accomplish (within the limits described) the purposes in mind through issuance of warrants instead of bonds is plain. Lopez v. Lasater, supra. Whether a "vote" is prerequisite to a bond issue in any amount is not in any wise involved.

If the levy in question be excessive within the meaning of what has been said, the fact does not appear, and a consequence is that the judgment of the trial court must be sustained.

If in the present case the Court of Civil Appeals has correctly interpreted Moller v. Galveston, the conflict in the two decisions grows out of reversal of the district court's judgment and rendition of a contrary one, in the absence of a showing that the levy is in excess of that allowed in section 9, art. 8, of the Constitution, and its statutory complement.

We recommend that the judgment of the Court of Civil Appeals be reversed and that the judgment of the district court be affirmed.

CURETON, C. J. The judgment of the Court of Civil Appeals is reversed and that of the district court affirmed, as recommended by the Commission of Appeals.