### SHELBY COUNTY, TEX., et al. v. PROVIDENT SAV. BANK & TRUST CO.*

No. 5980.

Circuit Court of Appeals, Fifth Circuit.
Jan. 7, 1932.

*Rehearing denied February 12, 1932.

Oliver J. Todd, of Beaumont, Tex., and J. M. Sanders, of Center, Tex., for appellants.

W. M. Harris, of Dallas, Tex., W. H. Graham, of Houston, Tex., and W. P. Dumas, of Dallas, Tex., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

On motion of the plaintiff (appellee here), this cause was transferred from the equity to the law side of the court, and, by amendment of the pleading which was filed by the plaintiff when the suit was brought, it became an action at law on past-due interest coupons detached from instruments which purported to be bonds of the appellant Shelby county, Tex. Those instruments showed on their face that the issue thereof purported to be under the provisions of an Act of the Texas Legislature approved March 16, 1925 (Loc. & Sp. Laws Tex. 1925, c. 174), amending a special road law for Shelby county (Loc. & Sp. Laws Tex. 1913, c. 2). That act provided for the commissioners' court of Shelby county funding into described bonds of Shelby county all indebtedness lawfully incurred for road and bridge purposes prior to March 1, 1925, whether the same be current, funding, or simple contract debts, and contained the provisions: "Provided that the aggregate amount of said bonds herein authorized shall not exceed the limitations provided by General Law; and provided further that it shall not be necessary to submit the issuance of said refunding bonds to a vote of the property tax-payers of said county." It appeared that two series of bonds purported to be issued under that act, the coupons sued on being detached from the bonds of the second or later series; that the order under which the bonds of the first series, in the amount of $64,459.92, were issued, provided for levying annually a tax of 5⁶⁄₁₀ cents on each $100 valuation of taxable property in said county to pay the in-

terest on the bonds of that series and to create a sinking fund sufficient to discharge those bonds at maturity; and that the order under which the bonds of the second series, in the amount of $255,765, were issued provided for levying annually a tax of 23 cents on each $100 valuation of taxable property in said county to pay the interest on the bonds of that series and to create a sinking fund sufficient to discharge those bonds at maturity. The validity of the coupons sued on was challenged on the grounds, among others: (1) That the issue of those bonds without the issuance thereof being submitted to a vote of the property taxpayers of said county was violative of the provisions of section 52, article 3, of the Constitution of Texas (amended in 1904) with reference to counties, under legislative provision, issuing bonds for purposes specified in that provision "upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby"; and (2) that the issue of the bonds of which those coupons were part was violative of the provision of the above-mentioned act "that the aggregate amount of said bonds herein authorized shall not exceed the limitations provided by General Law." The court overruled the objections to the instruments sued on, and charged the jury to find for the plaintiff for the amount of the interest coupons sued on, with interest on that amount. There was judgment on the verdict rendered pursuant to that instruction to the jury.

The contention that the coupons sued on were invalid, because the issue of the bonds of which they were a part was not authorized by a vote of a two-thirds majority of the resident taxpayers of Shelby county who were qualified electors of that county, was based on the following provision of the Constitution of Texas (section 52, art. 3), which by amendment of that Constitution became a part of it in 1904:

"The legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the state, to lend its credit or to grant public money or thing of value (value) in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company; provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described

and defined within the state of Texas, and which may or may not include towns, villages or municipal corporations, upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes to-wit:

"(a) The improvement of rivers, creeks and streams to prevent overflows, and to permit of navigation thereof, or irrigation thereof, or in aid of such purposes.

"(b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof.

"(c) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

At the time of the adoption of the above set out amendment, the Constitution of Texas contained other provisions, including section 9 of article 8 and section 2 of article 11, specifying things to be provided for by law, which had been held by the Supreme Court of Texas to authorize the Legislature to grant to counties the power to issue bonds for any of the purposes mentioned in such other sections. The language of the amendment in question does not indicate a purpose to repeal or affect, in addition to the section thereby amended, other provisions of the instrument of which it became a part. The language of that amendment does indicate a purpose to confer on the Legislature a power not previously possessed by it. It specifies the purposes for which the exercise of that power is authorized, prescribes conditions on which, not only a county, but defined districts embracing more or less than a county, may be authorized to issue bonds or otherwise lend their credit, and prescribes limitations on the amount of indebtedness which may be so authorized. That provision, as its language imports, and as it has been construed by the Supreme Court of Texas, in cases some of which arose soon after its enactment and

others long after that date, does not create a limitation on the power of the Legislature to authorize a county to issue bonds, not for purposes enumerated in that provision, but for purposes for which, under other sections of the Texas Constitution, the Legislature may provide by law. Mitchell County v. Bank, 91 Tex. 361, 43 S. W. 880; Lasater v. Lopez, 110 Tex. 179, 217 S. W. 373; Collingsworth County v. Allred (Tex. Sup.) 40 S.W.(2d) 13; Henderson County v. Allred (Tex. Sup.) 40 S.W.(2d) 17. The bonds now in question, not having been authorized or issued for a purpose specified in the above set out amendment, but to fund all indebtedness lawfully incurred by Shelby county for road and bridge purposes prior to March 1, 1925—that purpose being one for which under other sections of the Texas Constitution (article 8, § 9; art. 11, § 2) the Legislature may provide by law—the validity of those bonds was not affected by provisions of the above set out amendment.

For support of the second above mentioned ground of attack on the validity of the instruments sued on, appellant relied on the following: On the provision of section 7 of article 11 of the Constitution of Texas, "But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund;" on the provision of section 9, article 8, of that Constitution, that "no county * * * shall levy * * * exceeding fifteen cents for roads and bridges;" on the provision of article 723 of the Revised Statutes of Texas that annual ad valorem taxes to pay interest on bonds and create a sinking fund for their redemption "shall not exceed * * * for bridge or road and bridge bonds, fifteen cents on each one hundred dollars"; and on the provision of the statute with reference to an additional annual ad valorem tax for the further maintenance of public roads provided for by section 9, article 8, of the Texas Constitution, that "no bonds shall ever be issued under the provisions of this chapter." Revised Statutes of Texas, art. 6793.

It plainly appears from an above set out provision of the act relied on as authority for the issue of the instruments sued on that the aggregate amount of bonds authorized by that act was not "to exceed the limitations provided by General Law." Limitations provided by general law upon the amount of

such bonds as those provided for are created by the above set out constitutional provision which forbids the creation of any debt by a county, unless at the time the debt is created provision be made to assess and collect annually a tax sufficient to pay the interest thereon and provide at least 2 per cent. as a sinking fund, and by the above set out constitutional provision forbidding a county to levy exceeding 15 cents for roads and bridges. An annual tax of 5 ⁹/₁₀ cents on each $100 valuation of taxable property having been levied to take care of the interest and principal of the bonds of the first series issued under the act, for bonds subsequently issued under that act there was available an annual levy of not exceeding 9 ⁴/₁₀ cents on the $100 of taxable property of the authorized tax not exceeding 15 cents for roads and bridges. It follows that the amount of the bonds of the second series was excessive to the extent that more of such bonds were issued than could be taken care of by the levy of an annual tax not exceeding 9 ⁴/₁₀ cents on the $100 of taxable property, unless, for the payment of the principal and interest of those bonds, the county was lawfully authorized to levy a tax in addition to the one not exceeding 15 cents on the $100 for roads and bridges authorized by an above set out provision of the Constitution of Texas. The record does not indicate that there was anything that could be relied on as authority for levying an annual tax of more than 15 cents on the $100 of taxable property to take care of the principal and interest of the bonds issued under the act mentioned, except the fact that, prior to the incurring of the debts which the bonds in question purported to fund, an additional annual ad valorem tax of 15 cents on the $100 had been authorized by a majority of the qualified property taxpayers of Shelby county at an election held under the statute enacted pursuant to the provisions of the Constitution of Texas (section 9, art. 8) as to the Legislature authorizing a county to levy an additional ad valorem tax not exceeding 15 cents on the $100 valuation of taxable property "for the further maintenance of the public roads." That the additional tax so authorized was not applicable to the payment of the principal or interest of bonds is shown by the explicit provision of the statute conferring authority to levy and collect that tax that "no bonds shall ever be issued under the provisions of this chapter." The enactment of the last-mentioned statute having been an exercise of the power conferred by the Constitution of Texas by the provision, "and the Legislature may also authorize an additional ad valorem tax to be levied and collected for the further maintenance of the public roads," the levy and collection of such additional tax for use in a way forbidden by the Legislature cannot be maintained. Furthermore, a tax authorized to be levied and collected "for the further maintenance of the public roads" is not applicable to the payment of the principal or interest of bonds issued for the purpose of funding debts previously incurred for road and bridge purposes. Such application could not have the effect of bringing about or promoting "the further maintenance of the public roads." It appearing that the interest coupons sued on were parts of bonds of the second series issued in such an aggregate amount, $255,765, as required the levy of an annual tax of 23 cents on the $100 valuation of taxable property to pay the interest on that amount of bonds and to create the prescribed sinking fund to provide for the liquidation of that amount of bonds at maturity, those bonds exceeded the limitations provided by general law to the extent that the amount thereof was in excess of the amount of such bonds which required a levy of an annual tax of 9 ⁴/₁₀ cents on the $100 of taxable property to pay the interest and to create a sinking fund to provide for their liquidation at maturity. The bonds in question were valid only to the extent that the authorized annual ad valorem tax of 9 ⁴/₁₀ cents on the $100 was sufficient to provide the interest and the prescribed sinking fund. City of Columbus v. Woonsocket Institution of Savings (C. C. A.) 114 F. 162; Francis v. Howard County (C. C. A.) 54 F. 487; Id. (C. C.) 50 F. 44; Citizens' Bank v. City of Terrell, 78 Tex. 450, 14 S. W. 1003. The interest coupons sued on are invalid in the same proportion that the bonds from which they were detached were invalid.

For the appellee it was contended that by recitals contained in the bonds from which the coupons sued on were detached the appellant Shelby county was estopped to raise the question as to the amount of those bonds being excessive by reason of the tax levied to pay the interest thereon and provide the required sinking fund being in excess of the tax permitted by the Constitution of Texas to be levied for that purpose. Each of those bonds, after reciting that it was one of a series of bonds, numbered as stated, and aggregating $255,765.00, recited as follows: "And it is hereby certified and recited that the issuance of this bond and the series of which it is a part is duly authorized by law and that all acts, conditions and

**606**

things required to be done precedent to and in the issuance of this bond and of the series of which it is a part have been properly done and performed and have happened in regular and due time, form and manner, as required by law and that the total indebtedness of Shelby County, including the entire series of bonds of which this is one, does not exceed any constitution or statutory limitation."

■■■ An effect of above set out provisions of the Texas Constitution was to forbid the issue of county bonds in such an amount that the tax permitted to be levied for the payment of the principal and interest thereof is insufficient to pay the interest thereon and provide 2 per cent. as a sinking fund. The bonds themselves recited the amount of the issue. Purchasers of the bonds were chargeable with knowledge of the assessed value of the taxable property of the county. Such purchasers knew, or were chargeable with knowledge of, facts which enabled them by a simple arithmetical calculation to know that the aggregate amount of the bonds was greater than was authorized by the act under which they were issued, and that the issue was excessive to the extent that the tax permitted by the Constitution to be levied to pay principal and interest would be insufficient to pay the interest on the bonds and provide 2 per cent. as a sinking fund. This being so, purchasers of the bonds could not rely on recitals inconsistent with what they knew or were chargeable with knowing. No action of the Legislature could have the effect of enabling a county, by representations or recitals, to estop itself to deny the validity of what by constitutional provisions the Legislature was forbidden to authorize the county to do. Dixon County v. Field, 111 U. S. 83, 4 S. Ct. 315, 28 L. Ed. 360; Lake County v. Graham, 130 U. S. 674, 680, 9 S. Ct. 654, 32 L. Ed. 1065; Hedges v. Dixon County, 150 U. S. 182, 14 S. Ct. 71, 37 L. Ed. 1044; 19 R. C. L. 1020.

■■■ Based on the facts that the ad valorem road maintenance tax was voted for use in paying the interest and principal of the county warrants which were funded or retired by means of the bonds in question, it was contended for the appellee that, if the coupons sued on were invalid, it was entitled to be subrogated to the rights of the holders of such warrants which were funded or retired by means of the bonds acquired by the appellee. Assuming that the equitable right of subrogation existed, that equitable

right was not subject to be enforced in this action at law.

It appearing that the interest coupons sued on were valid for only part of the amount thereof, the court erred in charging the jury to find for the plaintiff for the amount of those coupons with interest thereon. The amount recoverable on those coupons should be settled contradictory between the parties. City of Columbus v. Woonsocket Institution of Savings, supra.

Because of the above-mentioned error, the judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.